# United States Court of Appeals
## For the First Circuit

No. 10-1155

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL TORRES-ROSARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before
Boudin, Selya and Dyk,*
Circuit Judges.

James B. Krasnoo, by appointment of the court, with whom Benjamin L. Falkner and Krasnoo Klehm LLP were on brief for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief for appellee.

September 23, 2011

---

*Of the Federal Circuit, sitting by designation.

**BOUDIN, Circuit Judge.** On March 6, 2008, law enforcement officers executed a search warrant at 8 George Street, Apt. 1, in New Bedford, Massachusetts, the residence of defendant-appellant Rafael Torres-Rosario, his girlfriend Miriam Pellot, and Pellot's son Wilfredo Guerra. Under the mattress in Torres-Rosario and Pellot's bedroom, the officers found a loaded firearm and Torres-Rosario's wallet, including photo identification and other paperwork. In the same room, the officers also found five bags of heroin, each bag twisted and tied into a knot with the ends cut off, as well as a bag of cocaine, $500 in cash, scissors, a razor blade, and many more empty baggies.

In custody and en route to the police barracks, Torres-Rosario waived his Miranda rights and told the police that he had bought the gun and that the gun belonged to him. Thereafter, Torres-Rosario was indicted for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (2006), and, after trial, found guilty by jury. On January 21, 2010, Torres-Rosario was sentenced as an armed career criminal, 18 U.S.C. § 924(e), to 226 months in prison.

Torres-Rosario first contends that, given District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. City of Chicago, 130 S. Ct. 3020 (2010), section 922(g)(1) is an unconstitutional exercise of Congress's authority. Because the issue was not raised below, we would typically review only for

plain error, United States v. Catalán-Roman, 585 F.3d 453, 463 n.8 (1st Cir. 2009), cert. denied, 130 S. Ct. 3377 (2010), but the claim implies actual innocence, will be a recurring issue and can here be resolved on the merits without affecting the outcome in the district.

The Supreme Court said that its opinions in Heller and McDonald "did not cast doubt on such longstanding regulatory measures as prohibition on the possession of firearms by felons." McDonald, 130 S. Ct. at 3047 (internal quotation omitted). All of the circuits to face the issue post Heller have rejected blanket challenges to felon in possession laws.[1] Although the Court may have qualified this approval by describing such longstanding bans as "presumptively lawful," Heller, 554 U.S. at 627 n.26, we assume that at most that description reserves the possibility of yet to be developed qualifications.

Torres-Rosario does make what he describes as an as-applied challenge, saying that he has no prior convictions for

---

[1]See United States v. Joos, 638 F.3d 581, 586 (8th Cir. 2011); United States v. Barton, 633 F.3d 168, 170-75 (3d Cir. 2011); United States v. Williams, 616 F.3d 685, 691-94 (7th Cir.), cert. denied, 131 S. Ct. 294 (2010); United States v. Rozier, 598 F.3d 768, 770-71 (11th Cir.), cert. denied, 130 S. Ct. 3399 (2010); United States v. Vongxay, 594 F.3d 1111, 1114-15 (9th Cir.), cert. denied, 131 S. Ct. 294 (2010); United States v. Khami, 362 F. App'x 501, 507 (6th Cir.), cert. denied, 130 S. Ct. 3345 (2010); United States v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009), cert. denied, 130 S. Ct. 1686 (2010); United States v. Stuckey, 317 F. App'x 48, 50 (2d Cir. 2009); United States v. Anderson, 559 F.3d 348, 352 n.6 (5th Cir.), cert. denied, 129 S. Ct. 2814 (2009).

any violent felony.  "It is well-established that felons are more likely to commit violent crimes than are other law-abiding citizens." Barton, 633 F.3d at 175.  But--given the "presumptively lawful" reference in Heller--the Supreme Court may be open to claims that some felonies do not indicate potential violence and cannot be the basis for applying a categorical ban.

Possibly it might even be open to highly fact-specific objections.  In Britt v. State, 681 S.E.2d 320 (N.C. 2009), the North Carolina Supreme Court held that Britt's conviction 30 years earlier, on a guilty plea to one count of possession of drugs with intent to distribute, was insufficient to deprive him of his right to keep and bear arms under the state constitution.  But such an approach, applied to countless variations in individual circumstances, would obviously present serious problems of administration, consistency and fair warning.

In all events, two of Torres-Rosario's prior convictions were for serious drug offenses--distribution and possession with intent to distribute Class A controlled substances--and drug dealing is notoriously linked to violence.  United States v. Luciano, 329 F.3d 1, 6 (1st Cir. 2003); United States v. Green, 887 F.2d 25, 27 (1st Cir. 1989).  Assuming arguendo that the Supreme Court might find some felonies so tame and technical as to be insufficient to justify the ban, drug dealing is not likely to be among them.

In a quite different claim of error, Torres-Rosario takes issue with several statements of the government, made in its closing argument to the jury, along the following lines:

> [I]n this case, there's only one reasonable inference, and that's that Mr. Rosario . . . took possession and control of that gun and put it under the bed. And because of the government's evidence in this case, you know why he did it. The reason that he did that is that he is a drug dealer. . . . It is not in any way hard to understand why a drug dealer would want a gun in his room.

Torres-Rosario objected at trial and asserts on appeal that such comments were improper, adding that the court prevented a searching officer from giving "an opinion" as to whether the drugs found in the apartment were intended to be distributed.

The closing argument was not improper. The government had to establish that Torres-Rosario possessed the gun, and while much of the evidence including an admission pointed in that direction, his own defense sought to cast doubt on that charge. The discovery of drugs and baggies in Torres-Rosario's bedroom was in evidence--no objection was made to that--and the government was free to invite the jury to infer that Torres-Rosario dealt in drugs, furnishing a motive for him also to possess a gun to protect them.

The fact that he was not <u>charged</u> with drug crimes does not preclude the government from offering "other crime" evidence so long as it is relevant for some purpose <u>other than propensity</u> and

"motive" is a traditional example listed in the rule itself. Fed. R. Evid. 404(b). Of course, the judge has authority to screen out such evidence where it is unduly prejudicial, Fed. R. Evid. 403; United States v. Smith, 292 F.3d 90, 100 (1st Cir. 2002), cert. denied, 538 U.S. 933 (2003), but that is not the present objection and the drugs' presence was already in evidence.

That the searching officer was not allowed to give his "opinion" is not inconsistent and is beside the point. There are various reasons why the judge might have excluded an opinion of this kind, one being that the jury needed no help in concluding that drugs and numerous baggies point toward distribution. The jury did not need an opinion from the officer to draw a common sense inference. Cf. United States v. Meadows, 571 F.3d 131, 145 (1st Cir.), cert. denied, 130 S. Ct. 569 (2009).

Torres-Rosario's next claim of error concerns excluded evidence. The thrust of Torres-Rosario's defense at trial was that Pellot's son Guerra, and not he, possessed the gun. In support of that theory, Waleska Torres, Torres-Rosario's sister, testified that she spent most of her time at Torres-Rosario's apartment and had seen Guerra with the gun but never Torres-Rosario. That testimony came in without objection.

However, the government did object on hearsay grounds when Waleska Torres further sought to testify that, apparently on the first occasion that Torres-Rosario saw Guerra holding the gun

in the apartment, Torres-Rosario told Guerra that "he didn't want that weapon there." This event had occurred a week or two before the police search that discovered the gun and drugs. The district court upheld an objection to the admissibility of the statement and, based on a subsequent colloquy, probably deemed it a hearsay statement which did not also qualify for the long-established state of mind exception.

The statement was certainly offered to suggest that Torres-Rosario himself associated Guerra with the gun. Confusion sometimes arises over use of the hearsay label where the statement taken literally is not "offered for the truth of the matter asserted" (here, Torres-Rosario's professed desire that the gun be removed) but its probative value depends (as here) indirectly on the declarant's veracity. Cf. 2 K. Broun, McCormick on Evidence § 246, at 130 (6th ed. 2006). Even if classified as hearsay, it would seemingly be rescued by the exception for statements of "the declarant's then existing state of mind . . . ." Fed. R. Evid. 803(3).

The government argued to the district judge and repeats here that the statement was not contemporaneous with the later seizure, and so does not show Torres-Rosario's state of mind at the relevant time. The contemporaneity requirement--that the statement evidence a "then existing" state of mind--is part of the rationale since spontaneity in expressing one's present state of mind is

thought to reduce the risk of deception. United States v. Rivera-Hernández, 497 F.3d 71, 81 (1st Cir. 2007). But if Guerra possessed the gun at the time of the statement, it might make more likely his possession of the gun at some later point.

The real difficulty is that, in the context of other evidence in the case, Guerra's sometime possession of the gun--which was already known to the jury by Waleska Torres' admitted testimony--did little to negate the overwhelming evidence that Torres-Rosario possessed the gun at the time of the drug seizure. It was found under Torres-Rosario's mattress and next to his wallet--Waleska Torres had told a police officer that Torres-Rosario had put the gun there--and Torres-Rosario admitted to the police that it was his gun. Against this, the excluded statement was almost useless, and its exclusion harmless by any standard.

There remains Torres-Rosario's most powerful objection on appeal, namely, to his sentence. This sentence was greatly increased because of the district court's findings that Torres-Rosario was subject to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and that he possessed the firearm in connection with a controlled substance offense, U.S.S.G. § 4B1.4(b)(3)(A), (c)(2). The latter is a secure finding but, through no fault of the district judge, the former is not.

To trigger the ACCA, Torres-Rosario had to be convicted previously of at least three violent felonies, serious drug offenses, or a combination thereof. 18 U.S.C. § 924(e)(1). The government established two prior serious drug offenses but the third (and fourth) felonies relied on by the government were for assault and battery under Massachusetts law, Mass. Gen. Laws ch. 265, § 13A. After Torres-Rosario was sentenced, this court reversed prior precedent that had automatically classified such Massachusetts assault and battery convictions as "violent felonies" under the ACCA.

This about-face, in United States v. Holloway, 630 F.3d 252 (1st. Cir 2011), was prompted by intervening Supreme Court precedent, Johnson v. United States, 130 S. Ct. 1265 (2010), and by further analysis of Massachusetts state law. Holloway held that a Massachusetts assault and battery conviction does not qualify as an ACCA predicate unless the government can make a showing, itself limited as to the sources of evidence, Shepard v. United States, 544 U.S. 13 (2005), that the defendant was convicted of a subset of the A and B offense applicable to violent conduct. Holloway, 630 F.3d at 259-60.

The government says that the objection was not raised in the district court and was explicitly waived when Torres-Rosario's attorney conceded at sentencing "that [Torres-Rosario] is an Armed Career Criminal under the statute." Waiver, where it occurs, is

treated as an "intentional," and therefore permanent, abandonment of a position. <u>United States</u> v. <u>Walker</u>, 538 F.3d 21, 22 (1st Cir. 2008). By contrast, a mere failure to object "forfeits" a claim, so review on appeal is only for plain error--requirements that are taxing but (as we explain below) can be satisfied here.

Courts are not always consistent in their use of the term waiver. On the one hand, they often quote the familiar rubric that waiver is intentional relinquishment of a <u>known</u> right, <u>Johnson</u> v. <u>Zerbst</u>, 304 U.S. 458, 464 (1938), and then ignore on appeal a failure to object at trial where a controlling precedent is thereafter overruled. <u>United States</u> v. <u>Dancy</u>, 640 F.3d 455, 465 (1st Cir. 2011). On the other hand, an <u>explicit</u> concession can waive both existing and yet-to-be-recognized rights. 7 LaFave, <u>Criminal Procedure</u> § 27.5(c), at 78 (3d ed. 2007).

At least where a party makes an explicit and specific concession, practical reasons favor holding a party to such a concession, whether given in exchange for a quid pro quo or merely to avoid evidence that the party would prefer not to be presented (such as the nature of the prior felony in a felon-in-possession case). Such undertakings are critical in managing the business of courts. If a lawyer wishes to preserve a possible claim despite an express concession or stipulation, identifying and reserving the claim is the customary approach. <u>See, e.g.</u>, <u>United States</u> v. <u>Weber</u>, 668 F.2d 552 (1st Cir. 1981), <u>cert. denied</u> 457 U.S.

1105 (1982); cf. United States v. Caraballo-Cruz, 52 F.3d 390, 392 (1st Cir. 1995).

Here, without reservation, Torres-Rosario conceded that he fell within the armed career criminal statute. But courts may excuse waivers and disregard stipulations where justice so requires.[2] We think that is the appropriate course in this instance. Failure to allow the challenge based on Holloway would likely mean a much longer and arguably unjustified prior term for Torres-Rosario; and, as we explain, there is no reason to think that the government would be unfairly prejudiced by reopening the issue.

Forgiving waiver, however, merely remits Torres-Rosario's Holloway argument to the test of plain error, see Morgan, 384 F.3d at 8, which is not easy to meet, because it requires error, plainness, prejudice to the defendant and the threat of a miscarriage of justice. United States v. Olano, 507 U.S. 725, 732-36 (1993). How far Olano embraces concerns of prejudice to the other side might be debated--a further reason for retaining a court leash on the withdrawal of a plea or stipulation.

Nevertheless, in this case the plain error tests are satisfied and no threat exists of unfair prejudice to the

---

[2]United States v. Morgan, 384 F.3d 1, 7 (1st Cir. 2004) (waiver for failure to present issue in briefs on appeal); United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001) (presentence appeal waiver); Am. Honda Motor Co. v. Richard Lundgren, Inc., 314 F.3d 17, 21 (1st Cir. 2002) (stipulation).

government.  Because both error and plainness are judged as of the time of appeal, United States v. Barone, 114 F.3d 1284, 1294 (1st Cir.), cert. denied, 522 U.S. 1021 (1997), treating a Massachusetts assault and battery conviction as an ACCA predicate, without further evidence of violence, is now plain error under Holloway, although (as we noted) the district judge was merely following then-existing circuit precedent.

As for likely prejudice to Torres-Rosario, district courts have regained considerable discretion in sentencing but the guidelines are still highly influential.  Indeed, an ACCA designation carries with it a 15-year mandatory minimum sentence, 18 U.S.C. § 924(e), and, under the guidelines, a hefty potential increase both in the defendant's offense level and in his criminal history category, U.S.S.G. § 4B1.4.  But for the designation, something less than a 20-year sentence would likely have been imposed.[3]

On remand, the government remains entitled to establish the ACCA designation, United States v. Pratt, 568 F.3d 11, 21 (1st Cir.), cert. denied, 130 S. Ct. 425 (2009), by showing that one of

---

[3]Without the ACCA enhancements, it appears (we do not decide the issue) that the appropriate guideline sentencing range could have been 110-137 months--based on the district court's determination of an offense level of 28 and criminal history category IV, absent ACCA.  Whether the 10 year maximum sentence prescribed for the felon in possession offense, 18 U.S.C. § 924(a)(2), applies to Torres-Rosario is a matter for the parties to address on remand.

the assault and battery convictions was a crime of violence, thus adding the necessary third predicate for an ACCA sentence. But the government would have to offer proof severely constrained by Shepard, 544 U.S. at 16, 24-26 (2005), and Pratt, 568 F.3d at 21, and nothing so far indicates that it necessarily can or will do so.

Finally, as to the threat of miscarriage of justice if we declined to remand, the difference in potential jail time would be a concern in any balance. The Shepard issue is easily addressed on remand without any need for a new trial on the merits. And, to the extent relevant to plain error, no prejudice to the government is likely to flow from the delay, given the nature of the type of evidence to which the government may resort.

Accordingly, we affirm Torres-Rosario's conviction, but vacate his sentence, and remand for resentencing consistent with this decision.

It is so ordered.