BARRON, Circuit Judge.
Wilson Serrano-Mercado contends the District Court made two mistakes in sentencing him for a federal gun crime. First, he argues the District Court erred in counting more than one of his prior convictions for Puerto Rico criminal offenses as a conviction for a “crime of violence” under the Sentencing Guidelines. Second, he contends the District Court gave too much significance under those same guidelines to the existence of an obliterated serial number on the frame of the firearm he was convicted of possessing, when the serial number on the slide was unaltered. We hold the District Court did not commit reversible error in either respect and thus affirm the sentence imposed.
I.
In District Court, Serrano pled guilty to being a felon in knowing possession of a firearm — a 9mm pistol. 18 U.S.C. §§ 922(g)(1), 924(a)(2). The Sentencing Guidelines specify a suggested sentencing range for such a conviction. U.S.S.G. §§ 2K2.1, 5A. Serrano rests his challenge to his sentence on the two errors that he *840 claims the District Court made in identifying the proper range. And thus, it is helpful to provide some background about how, in general, such ranges are identified, and then how, in particular, the range was identified here.
Under the guidelines, two variables provide the basis for the sentencing range. The first variable is called the offense level. It is expressed in terms of a point score. Id. § 5A. The score is a function, initially, of what is known as the base offense level. Id. § 2 introductory cmt. The base offense level is generally calculated with reference to the nature of the crime of conviction. The guidelines then add points to or subtract points from the base offense level for various enhancing 'or mitigating factors that may or may not be present in a defendant’s case. The result is the total offense level.
The second variable is a defendant’s criminal history category. Id. § 5A. The guidelines assign criminal sentences certain point values. Id. § 4A1.1. These points are then translated into one of six criminal history categories, represented by the use of a Roman numeral from I to VI. Id. § 5A. The more severe the criminal history a defendant has on the basis of the points assigned, the higher the category.
On the basis of these two variables, the guidelines then set forth suggested sentencing ranges in a chart. Id. One axis of the chart lists possible total offense levels. The other axis lists possible criminal history categories. At the intersection of every possible value for these two variables, the chart sets forth a suggested range of sentences.
Before actually imposing a sentence, a district court often receives input from various actors about how to calculate the defendant’s guidelines sentencing range. If there is a plea agreement, as there was here, the agreement will often recommend a range. And, in setting forth that recommendation, the agreement will often set forth certain facts that bear on the calculation of the base offense level, the total offense level, and the criminal history category. See Fed.R.Crim.P. 11(c)(1).
The district court will also have the benefit — as, again, was true here — of a probation officer’s pre-sentence report, which is based on that officer’s investigation. That report, too, will set forth facts bearing on the sentencing guidelines calculation. And that report may, in light of those facts, suggest a calculation different from the plea agreement. See Fed.R.Crim.P. 32(d).
The district court need not accept the calculations in the plea agreement or the pre-sentence report. Nor must the district court choose a sentence that falls within the range the district court’s own guidelines calculation yields, though the sentence must comply with additional substantive and procedural limitations. See 18 U.S.C. § 3553; United States v. Booker, 543 U.S. 220, 245, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). But if the district court errs in making the guidelines calculation, the sentence may be reversed even though that calculation does not directly compel the sentence. See Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); United States v. Tavares, 705 F.3d 4, 25 (1st Cir.2013). And that is what Serrano argues must happen here.
In this case, the plea agreement recommended a sentencing range tied to a base offense level of 22. The agreement made that calculation because it stated that Serrano had been convicted of one prior felony for a “crime of violence” at the time of his unlawful firearm possession. U.S.S.G. §§ 2K2.1(a)(3), 4B1.2(a). The plea agreement did not identify any of Serrano’s prior convictions. The plea agreement *841 thus did not specify which one qualified as the crime of violence that warranted that base offense level of 22. The plea agreement’s calculation also did not include a four-point increase under the guidelines’ enhancement that applies when the firearm involved in a felon-in-possession charge has “an altered or obliterated serial number.” Id. § 2K2.1(b)(4).[1]
The probation officer’s pre-sentence report, as amended, departed from the plea agreement’s guidelines calculation. And it did so in two respects.
First, the amended pre-sentence report suggested a base offense level of 24, rather than 22. The report used that higher base offense level because it stated that Serrano actually had more than one prior felony conviction for a “crime of violence.” Id. §§ 2K2.1(a)(2), 4B1.2(a). The report did not expressly identify which of Serrano’s prior convictions qualified as a crime of violence. The report thus did not identify the ones the report relied upon in setting the base offense level at 24.
The report did list, however, a number of prior convictions for Serrano. These convictions included a 2006 Puerto Rico conviction for assault that the parties both appear to agree does qualify as a conviction for a crime of violence. These convictions also included a 2005 Puerto Rico conviction under Article 3.1 of Law 54, Puerto Rico’s Domestic Abuse Prevention and Intervention Act, P.R. Laws Ann. tit. 8, § 631, which the government on appeal now contends also qualifies but which Serrano argues does not. And, finally, the list included an earlier 2004 conviction that the government does not argue qualifies.
The second respect in which the presentence report differed from the plea agreement concerned the serial-number enhancement. Unlike the plea agreement, the report concluded the enhancement did apply. The report thus increased its calculation of the total offense level by four points. U.S.S.G. § 2K2.1(b)(4).
The District Court adopted the pre-sentence report’s recommendations regarding the guidelines calculation. The District Court stated Serrano had “two domestic violence convictions and one assault conviction which meet the guidelines criteria for crimes of violence.” The District Court thus started from a base offense level of 24 because it had found, contrary to the representation in the plea agreement, that Serrano had been convicted of more than one offense that qualified as a crime of violence. The District Court then applied the four-point serial-number enhancement. Finally, and consistent with the plea agreement and the pre-sentence report, the District Court subtracted three points for the defendant’s acceptance of responsibility, U.S.S.G. § 3E1.1 cmt. 3, due to the plea.
The District Court thus arrived at a total offense level of 25. The District Court also determined Serrano had a criminal history category of V. These calculations then combined to set Serrano’s guidelines sentencing range between 100 and 125 months. The District Court imposed a sentence at the lower bound of that range: 100 months.
On appeal, Serrano argues for the first time that his base offense level should have been 22, not 24.[2] He contends that *842 the lower base offense level is the right one because his 2006 felony conviction for assault is the' only one of his prior convictions that qualifies as a crime of violence under the guidelines. Serrano also argues, as he did below, that the serial-number enhancement cannot apply because even though one serial number on the gun’s frame was obliterated, another serial number on the slide remained unaltered. For that reason, he contends the District Court erred in adding four points to his total offense level.[3]
If the District Court had used a base offense level of 22 and had not applied the serial-number enhancement, then, after the deduction for acceptance of responsibility, Serrano’s total offense level would have been 19. With his criminal history category of V, his guidelines sentencing range would have been 57 to 71 months in prison. U.S.S.G. § 5A. Under the District Court’s actual guideline calculation, by contrast, the range was 100- to 125-months.
II.
Serrano’s first challenge is to the District Court’s conclusion that his base offense level was 24 because he had two prior felony convictions that counted under the guidelines as convictions for a “crime of violence.” We start by describing how we usually decide whether a prior conviction is for a crime of violence. We then explain the problem .with using that same approach here, given Serrano’s failure to preserve the argument by properly raising it below.
A.
Ordinarily, we use what the precedents call a “categorical approach” to decide if a defendant’s prior felony conviction was for a crime of violence. United States v. Jonas, 689 F.3d 83, 86 (1st Cir.2012). Under this approach, the conviction counts as one for a crime of violence if the elements of the conviction fit the guidelines’ definition of a crime of violence. Id. at 86-87. Otherwise, the conviction does not count, no matter what the facts show the defendant actually did in committing the crime— even, that is, if those facts show he acted violently. Id. at 86.
This focus on the elements of the conviction — rather than the underlying conduct — fits with the text of the Sentencing Guidelines, which makes the base offense level for the felon-in-possession offense turn on prior “convictions of ... a crime of violence,” not on prior conduct. U.S.S.G. 2K2.1(a)(2),(3) (emphasis added); see Descamps v. United States, — U.S. —, 133 S.Ct. 2276, 2287, 186 L.Ed.2d 438 *843 (2013). And this approach also ensures present sentences are not based on documents that could be quite old, might be uncertain or disputed, and may contain factual allegations the defendant did not contest at the time for any of a number of reasons unrelated to the accuracy of the allegations. Descamps, 133 S.Ct. at 2289.
In some cases, though, this categorical approach runs into a potential obstacle. That obstacle arises when the conviction is for a crime set forth in a statute that is “divisible.” A divisible statute is one that “sets out one or more elements of the offense in the alternative — for example, stating that burglary involves entry into a building or an automobile.” Id. at 2281. The problem such a statute poses is that these alternative elements may create distinct offenses, each of which may or may not itself be a crime of violence.
To deal with this wrinkle, we employ what the precedents call — not surprisingly — a “modified categorical approach.” Under this approach, we look to limited materials, often called Shepard documents, from the convicting court, such as charging documents, plea agreements, plea colloquies, and jury instructions. Id. at 2281, 2284 (relying on Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)). We do so not to determine the conduct the defendant engaged in while committing an offense, as such conduct is of no relevance. We instead inspect these materials in order to identify (if such identification is possible) the actual offense of conviction from among the distinct offenses set forth in a divisible statute. Id. at 2281.
Once we identify the distinct offense of conviction by consulting the materials, we then return to the categorical approach. We consider whether the elements of that distinct offense meet the definition of a “crime of violence.”
All of which brings us to the final stage in this process: the analysis of how the elements of the offense of conviction match up with the guidelines’ definition of a “crime of violence.” A conviction for an offense qualifies as a conviction for a crime of violence if the elements of the underlying offense satisfy either (or both) of two clauses set forth in the relevant guideline and that offense is punishable by more than a year in prison. U.S.S.G. § 4B1.2(a); see also U.S.S.G. § 2K2.1 cmt. 1 (cross-referencing the definition in § 4B1.2 to determine the base offense level of the felon-in-possession crime).[4]
The guideline’s first clause provides that a crime of violence is “any offense under federal or state law ... that .. . has as an element the use, attempted use, or threatened use of physical force against the person of another.” U.S.S.G. § 4B1.2(a)(1). This so-called “force clause” requires that the offense of conviction include as an element “violent force,” that is, “force capable of causing physical pain or injury to another person.” Johnson v. United States, 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). If the offense of conviction does not involve the “use, attempted use, or threatened use” of such violent physical force — as may be the case with an offense of common-law battery, whose force element can “be satisfied by even the slightest offensive touching” — then that offense does not meet the requirements of the force clause. Id. at 139, 130 S.Ct. 1265.
*844 The guideline’s second clause provides that a prior felony conviction qualifies ás a crime of violence if it is for “any offense under federal or state law ... that ... is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” U.S.S.G. § 4B1.2(a)(2). Even if an offense does not fall under the force clause, therefore, that offense qualifies as a crime of violence if it matches one of these enumerated crimes or otherwise satisfies the requirements of the guideline’s so-called “residual clause.”
B.
In applying this framework, we begin by noting the parties agree that Serrano’s 2006 conviction for assault under Puerto Rico law does count as a conviction for a crime of violence. We also note that Serrano does not dispute that the District Court counted the 2005 conviction for domestic violence under Article 3.1 in finding that Serrano had more than one conviction for a crime of violence. Serrano’s challenge to the District Court’s use of the base offense level of 24 can succeed, therefore, only if Serrano can show the District Court erred in counting that Article 3.1 conviction. Otherwise, there would be at least two such qualifying convictions. We thus now turn to the propriety of the District Court’s finding on that point.
The first thing to note is that Article 3.1 is a divisible statute. It covers “[a]ny person who employs physical force or psychological abuse, intimidation or persecution against the person of [a domestic partner] ... to cause physical harm to the person, the property held in esteem by him/her, ... or to another’s person, or to cause grave emotional harm.... ” P.R. Laws Ann. tit. 8, § 631 (emphasis added). The statute thus sets out multiple constellations of elements in the alternative. One set of elements requires the use or threat of “physical force.” The others require “psychological abuse, intimidation or persecution.”
Faced with such a statute, we ordinarily would apply the modified categorical approach. Using that approach, we first would try to determine, from the relevant documents, whether Serrano’s prior conviction under Article 3.1 was for an offense predicated on the “physical force” element or instead for an offense predicated on the other elements set forth in that statute. Then, after having identified the actual offense of conviction, we would determine whether that offense met the guideline’s requirements for a crime of violence.
But we are frustrated in doing so here. Serrano made no specific challenge to the pre-sentence report’s contention that the list of his prior convictions included two felonies that were for a crime of violence. That was so even though that list included a conviction under Article 3.1 but did not specify further the particular offense under that -law that had resulted in that conviction. At sentencing, moreover, the District Court simply identified as qualifying convictions the one for assault and the two for domestic violence. Yet Serrano did not complain that the District Court, in so finding, did not consult the limited set of documents from the court of conviction that would have helped it determine the distinct elements of the offense that provided the basis for Serrano’s actual 2005 conviction under Article 3.1. In consequence, we have no such documents to review as part of the record on appeal.
As a legal matter, moreover, Serrano’s failure to object in the District Court affects the standard of review. Rather than reviewing de novo whether the conviction under Article 3.1 counts as a conviction for a crime of violence, see Jonas, *845 689 F.3d at 86, we may review only for plain error, United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir.2011). And that standard is strict. Serrano can satisfy it “if, and only if, [he] succeeds in showing ‘(1) that an error .occurred (2) which was clear or obvious and which not only (3) affected the defendant’s substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.’ ” United States v. Padilla, 415 F.3d 211, 218 (1st Cir.2005) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir.2001)).
Of course, if it were clear or obvious that none of Serrano’s prior felony convictions — save for the 2006 one for assault — could qualify as one for a crime of violence, then the defendant’s task on appeal might not be so daunting, despite the strict standard of review. But because Serrano was convicted under Article 3.1, and Article 3.1 is a divisible statute, we could come to that conclusion only if we were confident that none of the distinct offenses set forth in that law would so qualify. And, as we now explain, we are not of that view, given how we interpret one portion of Article 3.1.
C.
The case for concluding that at least one offense under Article 3.1 qualifies as a crime of violence is strong. Among the divisible offenses set forth in that statute is one that covers “[a]ny person who employs physical force ... to cause physical harm” to a protected person. P.R. Laws Ann. tit. 8, § 631.
In making physical force an element, the text of Article 3.1 suggests that something more than a mere non-consensual touching is required to satisfy that element. Instead, the text requires the physical force be intended to “cause physical harm.” The Puerto Rico Supreme Court has also interpreted the physical-force element of Article 3.1. And consistent with the text, that court has construed that element to “prohibit[ ] ... physical abuse,” Pueblo v. Ayala García, 186 P.R. Dec. 196, 213 (2012) (translation provided by stipulation of parties through letter under Federal Rule of Appellate Procedure 28(j)), and stated that “any degree of force is sufficient to configure the offense if ... employed with the intention of causing some damage,” id.; see also Pueblo v. Roldán López, 158 P.R. Dec. 54, 61 (2002).
Taken together, the text of Article 3.1 and the Puerto Rico Supreme Court’s interpretation of it strongly suggest the statute’s physical-force element involves the kind of violent force “capable of causing physical pain or injury to another person.” Johnson, 559 U.S. at 140, 130 S.Ct. 1265.[5] And that is the kind of force required by the crime of violence sentencing guidelines’ force clause. Id.
To the extent any uncertainty remains, moreover, we do not believe it is so great as to make it clear or obvious that the physical-force offense set forth in Article 3.1 could not qualify as a crime of violence under the guideline. Yet it is just such a clear or obvious exclusion from the guideline that Serrano must demonstrate given that our review is for plain error.
*846 Serrano argues, however, that he still should win because it is at least possible he was convicted of an offense under Article 3.1 that does not qualify as a crime of violence. And that is because, he contends, that statute is divisible and the elements of “psychological abuse, intimidation or persecution” plainly do not set forth an offense that is a crime of violence.
Serrano rests that fall-back contention on more than his assertion that those particular elements, by their plain terms, do not require “physical force” or a threat of such force. He also argues those elements establish distinct offenses that are too unlike the other crimes enumerated in the residual clause of the crime of violence guideline to be swept up by it. Cf. Begay v. United States, 553 U.S. 137, 142, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008) (holding that the enumerated crimes preceding the residual clause “illustrate the kinds of crimes that fall within the statute’s scope” and “indicate!] that the statute covers only similar crimes”). Serrano then closes out this argument by contending that, without documents that show which elements in Article 3.1 supported his actual conviction under that law, there is no way to know whether that conviction qualifies as one for a crime of violence. And, in the face of that claimed uncertainty, he argues, it is plain error to hold that he was convicted of such a qualifying crime.
The government responds by arguing that uncertainty about what such documents might show is beside the point. The government argues that, in fact, all offenses described in Article 3.1 are crimes of violence, or, at least, that we should view them as such on review for plain error. And the government bases that contention on the residual clause of the crime of violence guideline, which, the government contends, encompasses all of those offenses. Or, at least, the government contends, the residual clause of the guideline does not clearly or obviously exclude them, whether they include the physical-force element or not.
But we do not need to resolve this dispute over how to characterize all parts of Article 3.1. Because our review is only for plain error, it is enough that we have determined that a conviction under the physical-force element of Article 3.1 would likely qualify as a crime of violence. For as we next explain, our precedents show that Serrano may not benefit from having left us completely in the dark (through his failure to object below) about what the documents relating to the conviction under Article 3.1 would reveal about whether he was convicted of an offense that contains the physical-force element or instead some other offense that does not require proof of that element.
D.
We confronted a situation very much like this in United States v. Turbides-Leonardo, 468 F.3d 34 (1st Cir.2006). There, the defendant also challenged his sentence on appeal because it rested in part on a conviction under a divisible statute, one portion of which contained elements that qualified for a guideline enhancement — there, for drug trafficking— and another of which did not. Id. at 37. And there, too, the defendant had not challenged either the pre-sentence report’s characterization that the conviction was for an enhancement-qualifying offense, or the district court’s guideline calculation that tracked the pre-sentence report. As a result, there were no records available on appeal to show which of the divisible statute’s distinct offenses was in fact the offense of conviction. Id. at 40.
After finding the defendant’s failure to object below, in context, actually constituted waiver, id. at 38 — a claim that the *847 government does not advance here — we went on to consider in dicta whether the application of the drug-trafficking guideline enhancement should be reversed under the plain error standard, id. at 38-40. And we concluded it should not. Id. We explained the District Court committed no error in accepting the unchallenged characterization, but that, even if the District Court had erred in doing so, reversal was still not justified. Id.
In consequence of the defendant’s failure to object below, we explained, “we [we]re left to guess” the “unknown variable” of “the contents of the record of the prior conviction.” Id. at 40. And because we were left to guess, “there [wa]s no way for the appellant to show a reasonable probability that he would be better off from a sentencing standpoint had the district court not committed the claimed ... error.” Id. For that reason, we concluded the defendant could not meet the heightened prejudice showing plain error review requires. Id.
We then relied on Turbides-Leonardo’s reasoning in holding there to be no prejudice in United States v. Davis, 676 F.3d 3 (1st Cir.2012), our last binding precedent on the issue. In Davis, the defendant challenged his sentence as relying on a prior conviction under a divisible assault statute, one portion of which defined a crime of violence and another portion of which did not. Id. at 7-8. Davis did not object when the prosecutor and the presentence report characterized his conviction as qualifying as a crime of violence, nor did he object when the District Court characterized the conviction similarly and relied on it in crafting the sentence. Id. at 5-6. And so we reviewed only for plain error.
We held that, whether or not the District Court clearly erred by not demanding the documents of conviction before making the crime-of-violence determination, the defendant bore the burden of showing “a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence.” Id. at 10 (quoting Turbides-Leonardo, 468 F.3d at 39). We then held, relying expressly on Turbides-Leonardo’s reasoning about the need to show prejudice, that the defendant did not satisfy that burden because he failed to point to any reason to conclude that an examination of the documents would indicate the conviction was for an offense that does not qualify as a crime of violence. Id.
Here, just like in Davis, the District Court had before it a pre-sentence report that claimed the defendant had a second prior conviction that qualified for the guideline enhancement. And yet, again, like in Davis, the defendant did not contest that representation, even though the defendant informed the judge through counsel that he had reviewed the pre-sentence report containing that information.
Indeed, although the defendant made a general objection to the probation office regarding the total offense level used in the first version of the pre-sentence report, the record does not indicate that Serrano raised a more specific objection to the probation office regarding the base offense level and the number of his prior convictions for a crime of violence. And, the record further shows, he failed to do so even after the office clearly explained its view that Serrano had two such prior convictions.
Nor did the defendant raise an objection in his sentencing memorandum, or inform the District Court at sentencing that it believed it had erred in concluding — as it plainly stated in announcing the sentence — that, in addition to the 2006 conviction for assault, there was another qualifying conviction that was for domestic *848 violence. The District Court thus had no Shepard documents before it — nor any request that it obtain and review such documents — that might cast doubt on either the pre-sentence report’s assertion that the enhancement applied or on the defendant’s apparent agreement with that assertion. Accordingly, we have no such Shepard documents before us now. And thus, as Davis — by incorporating Turbides-Leonardo’s reasoning — instructs, we have no basis for concluding it is reasonably probable that those documents would show Serrano was convicted of an offense under Article 3.1 that would not qualify as a crime of violence.
In fact, even now, on appeal, Serrano still does not assert he was not convicted under Article 3.1 of the offense involving-physical force, nor does he request to supplement the record to include the appropriate documents of conviction on the ground that they would redound to his benefit. See United States v. Zubia-Torres, 550 F.3d 1202, 1209 n. 3 (10th Cir.2008) (declining to consider “the effect if counsel had proffered the relevant documents on appeal”). He contends only that it cannot be certain on this record whether he was so convicted and that, in any event, the “physical force” offense clearly or obviously does not qualify — a contention we have already rejected.
Therefore, as in Turbides-Leonardo and Davis, we conclude Serrano has not shown the necessary prejudice, even assuming the District Court erred in not independently seeking out the records of conviction.[6] This conclusion comports with the decisions of several sister circuits in similar plain-error cases. See Zubia-Torres, 550 F.3d at 1208-10; United States v. Williams, 358 F.3d 956, 966-67 (D.C.Cir.2004); United States v. Ransom, 502 Fed.Appx. 196, 198-201 (3d Cir.2012) (unpublished). And while we are aware that other circuits have vacated sentences and remanded after finding plain error in arguably analogous circumstances, they did not, in so doing, address the lack-of-prejudice argument that the other circuits just mentioned have relied upon and that Davis requires us to find determinative here. See United States v. Reyes, 691 F.3d 453, 460 (2nd Cir.2012) (concluding, without explanation, that the district court’s failure to sua sponte investigate the documents of conviction led to an erroneously elevated offense level); United States v. Castillo-Marin, 684 F.3d 914, 927 (9th Cir.2012) (same); United States v. Pearson, 553 F.3d 1183, 1186 (8th Cir. *849 2009) (same), partially overruled on other grounds by United States v. Tucker, 740 F.3d 1177, 1184 (8th Cir.2014); United States v. Bonilla-Mungia, 422 F.3d 316, 321 (5th Cir.2005) (vacating and remanding without discussing prejudice).
We do not say, however, that there are no circumstances in which reversal in a related case, involving different facts, might be warranted. In United States v. Torres-Rosario, 658 F.3d 110 (1st Cir.2011), we held the District Court committed prejudicial plain error in characterizing the conviction at issue in that case as a crime of violence, id. at 116. But there, under First Circuit precedent, binding at the time of sentencing, it was clear from the charging documents in the record that the conviction qualified categorically as a crime of violence. Id. at 115. The defendant thus understandably did not contest the characterization or assert that the other documents of conviction would be relevant to whether the conviction was in fact qualifying, and indeed stipulated that his convictions qualified. Id. at 115-16.
By the time of the appeal, however, the First Circuit had changed course in response to a recent case from the Supreme Court. We had made clear that the type of conviction at issue did not necessarily qualify categorically as a crime of violence and, therefore, that further inquiry into the documents of conviction under the modified categorical approach would be appropriate. Id. at 115. For that reason, the un-objected-to characterization of the conviction in Torres-Rosario could not have been understood as an unchallenged agreement to a factual characterization of the conviction.
Here, by contrast, as in Turbides-Leonardo, no First Circuit precedent, later overruled, established at the time of sentencing that the conviction for the underlying offense categorically qualified as a crime of violence. And so the defendant’s failure to contest the pre-sentence report’s and the District Court’s characterization of those prior convictions is, as Davis held in applying Turbides-Leonardo, key to our assessment that he has not met his burden of showing prejudice. And while Davis is itself a case with facts like Torres-Rosario, that does not make its express adoption of Turbides-Leonardo’s prejudice analysis any less controlling in a case like this one, which mirrors the facts in Turbides-Leonardo rather the facts in Torres-Rosario. We thus do not address how Davis and Torres-Rosario’s analysis of the prejudice issue should be reconciled in a case presenting the distinct facts presented in those cases.
III.
Under the Sentencing Guidelines, the offense level increases by four points if the firearm involved in a felon-in-possession conviction “had an altered or obliterated serial number.” U.S.S.G. § 2K2.1(b)(4)(B). Serrano’s pistol had an obliterated serial number on the frame and an unaltered serial number on the slide. The District Court therefore applied the four-point serial-number enhancement.
Serrano argues, however, that the District Court erred because the serial number, though obliterated in one place, remained unaltered elsewhere on the gun. He contends that the guideline could not have been intended to apply in such circumstance because the serial number itself remains perfectly visible, albeit in only one place rather than two.
Whether Guideline § 2K2.1(b)(4)(B)’s four-point serial-number enhancement may apply in this type of case is a question of law (and, apparently, a question of first impression). Because Serrano properly preserved this argument below, our review *850 is de novo. See United States v. Maldonado, 614 F.3d 14, 17 n. 1 (1st Cir.2010) (“Abstract legal issues under the guidelines are reviewed de novo.... ”).
Like the District Court, we conclude the enhancement does apply in Serrano’s case. The text of the guideline requires only “an altered or obliterated serial number,” U.S.S.G. § 2K2.1(b)(4)(B) (emphasis added). The guideline’s text does not require that all of the gun’s serial numbers be so affected. And here, the complete defacement of the serial number on the frame of the firearm resulted in the required obliteration.
Moreover, this plain reading of the text — that the obliteration of “a[ ]” serial number is enough — accords with the intent of Guideline § 2K2.1(b)(4), which is “to ‘discourag[e] the use of untraceable weaponry.’ ” United States v. Carter, 421 F.3d 909, 914 (9th Cir.2005) (alteration in original) (quoting United States v. Seesing, 234 F.3d 456, 460 (9th Cir.2001)). Applying an enhancement for firearms that have a single totally obscured serial number may serve as a deterrent to tampering, even when incomplete. And, relatedly, the single-obliteration rule could facilitate tracking each component that bears a serial number, given that various parts of firearms may be severable.
And precedent is not to the contrary. We have held the mere alteration of a serial number violates 18 U.S.C. § 922(k), a related criminal statute, without regard to whether such alteration is severe enough to prevent that same serial number from being read, United States v. Adams, 305 F.3d 30, 34 (1st Cir.2002); see also Carter, 421 F.3d at 915-16 (applying Adams to interpret Guideline § 2K2.1(b)(4)(B)). So, too, we conclude the text of this guideline is best construed — consistent with the plain meaning of its words — to trigger the enhancement when the serial number on the frame of a firearm is obliterated even if other serial numbers on the firearm, like the one left intact on the slide of this weapon, are unaltered.[7] We thus do not believe the District Court erred in applying the four-point enhancement.
IV.
For these reasons, we affirm the District Court’s sentence against the challenges raised in this appeal.

. The plea agreement also included a clause waiving Serrano's appeal rights, but only if the court accepted the plea’s sentencing recommendation. Because the court did not, the government concedes that the plea agrees ment’s appeal waiver does not apply.

. Serrano argues on appeal that he raised an objection below, but we conclude otherwise. Serrano did object to the first pre-sentence report's "total adjusted offense level [of] 23 when the plea agreement establishes a total offense level of 19.” But nothing in the rec *842 ord indicates that this general objection to the unamended pre-sentence report’s total offense level was an objection to counting the 2005 felony under Article 3.1 — or any other prior offense — as an additional crime of violence for purposes of determining the base offense level. Indeed, the pre-sentence report’s addendum relates that when, following Serrano’s lodging that general objection, the probation officer explained his view that Serrano had two prior convictions for crimes of violence, Serrano did not offer an objection or contrary argument. And, finally, Serrano did not object when the District Court stated at sentencing that it was applying the base offense level of 24 because Serrano had at least two prior convictions for a crime of violence, including not only one for assault but two for domestic violence.

. Serrano’s opening brief referenced a third potential ground for challenging the sentence: ineffective assistance of counsel. But Serrano raised this argument only in the statement of issues on appeal and did not advance the argument in the body of the brief. His reply brief made clear that the ineffective-assistance argument was erroneously added to the statement of issues in the first brief. We thus do not address it further.

. "This definition is nearly identical to the definition of a ‘violent felony’ contained in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B). Recognizing this resemblance, courts consistently have held that decisions construing one of these phrases generally inform the construction of the other.” Jonas, 689 F.3d at 86.

. We thus need not address whether the physical-force offense qualifies as a crime of violence under the guideline’s residual clause, which sweeps in offenses that ”involve[] conduct that presents a serious potential risk of physical injury to another.” U.S.S.G. § 4B 1.2(a)(2). We note that the Supreme Court has recently asked for briefing on the question whether identical language in a distinct criminal -statute, the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. Johnson v. United States, — U.S. —, 135 S.Ct. 939, 190 L.Ed.2d 718 (2015).

. Because we rely on the defendant's failure to show the necessary prejudice in this case, we need not address whether it was clear and obvious error for the District Court to fail sua sponte to demand and evaluate documents relating to the conviction. Other circuits have addressed this issue. Compare United States v. Aviles-Solarzano, 623 F.3d 470, 475 (7th Cir.2010) (characterizing lack of objection as factual stipulation, and finding no error), with, e.g., United States v. Castillo-Marin, 684 F.3d 914, 921 (9th Cir.2012) (finding clear and obvious error). We have held that a failure to demand and evaluate such documents was not clear and obvious error where the defendant not only failed to object but also "apparently] acquiescefd]” in his sentencing memorandum "to the characterization of the prior convictions as crimes of violence” by stating that he “technically qualifies” for the enhancement. Ríos-Hernández, 645 F.3d at 463. But we held that it was clear and obvious error in the circumstances addressed by United States v. Torres-Rosario, 658 F.3d 110 (1st Cir.2011), and we came to a similar conclusion in dicta in our recent opinion in United States v. Ramos-González, 775 F.3d 483, 507 (1st Cir.2015), on which Serrano relies. We note that we also suggested in Ramos-Gonzalez that we would have found prejudice to the defendant, but in doing so we did not address the contrary holding on that point of Davis (based on the reasoning of Turbides-Leonardo), id., which, as we have explained, controls this case.

. We do not need to reach the further issue whether the guideline would apply if the serial number on the frame were unaltered but a serial number on the slide or other part of the firearm were altered or obliterated. See United States v. Romero-Martinez, 443 F.3d 1185 (9th Cir.2006) (holding the guideline applicable in such a case).