# United States Court of Appeals
## For the First Circuit

No. 14-1303

UNITED STATES OF AMERICA,

Appellee,

v.

LAUREN MACARTHUR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Lenore Glaser for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellee.

November 9, 2015

**KAYATTA**, **Circuit Judge**.   Defendant Lauren MacArthur ("MacArthur") entered a straight guilty plea to:   (1) illegal possession of firearms after having been previously convicted of a crime punishable by imprisonment for a term of more than one year; and (2) illegal possession of firearms that he knew or had reasonable cause to believe were stolen.   The district court sentenced him to concurrent terms of imprisonment of 216 months for count one and 120 months for count two.

MacArthur now challenges the district court's calculation of the applicable sentencing ranges under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), which the district court considered in determining the length of MacArthur's sentence.   He claims that the district court erred three times:   (1) by treating two prior burglary convictions as crimes of violence so as to raise his base offense level to 26 under § 2K2.1(a)(1) of the Guidelines; (2) by denying him credit for acceptance of responsibility under § 3E1.1; and (3) by applying an obstruction of justice enhancement under § 3C1.2.[1]   MacArthur also makes several pro se supplemental claims.

For the reasons explained below, we affirm the sentence.

---

[1] Because MacArthur was sentenced in March 2014, and in the absence of ex post facto clause concerns, the court uses the Guidelines Manual that became effective on November 1, 2013.   See U.S.S.G. § 1B1.11.

# I.  Facts

"Because this appeal follows a guilty plea, we draw the facts from the change-of-plea colloquy, the presentence investigation report (PSI Report), and the transcript of the [sentencing] hearing."  United States v. Cintrón-Echautegui, 604 F.3d 1, 2 (1st Cir. 2010).

On January 20, 2012, a Maine State trooper observed on Interstate 95 a moving vehicle displaying a license plate that was obscured by dirt.  When the trooper activated his emergency lights, the vehicle (which was being driven by MacArthur) sped away.  During the ensuing chase, MacArthur drove through red lights and intersections at high rates of speed, passing other vehicles at speeds of up to 90 miles per hour.  Law enforcement eventually slowed MacArthur by deploying a spike strip that punctured one of his tires.  MacArthur, nevertheless, pressed on, crossing into an oncoming lane of traffic at one point and hitting a bridge guardrail.  The trooper eventually stopped MacArthur's vehicle by ramming it off the road.  Once the vehicle was stopped, MacArthur fled on foot.  Giving chase, law enforcement caught MacArthur and placed him under arrest.

After MacArthur's arrest, local police retrieved a firearm that had been spotted in a snowbank near the scene of the arrest, plus a second firearm found in a riverbank near where MacArthur's vehicle (with windows opened in the cold winter

weather) had swerved during the chase. The firearms had been stolen in a burglary shortly before MacArthur's arrest. Each firearm had magazines inserted in them that would hold more than fifteen rounds of ammunition.

MacArthur was federally indicted on May 17, 2012, and pled guilty on November 26, 2012. On March 12, 2014, the district court sentenced MacArthur to concurrent terms of imprisonment of 216 and 120 months.

Between indictment and sentencing for his federal offenses, MacArthur found himself in jail on state charges. During that imprisonment, MacArthur assaulted a corrections officer. That assault occurred after MacArthur refused to comply with an order to return to his cell during a lockdown and obstructed the efforts of a corrections officer who attempted to close MacArthur's cell door. When the corrections officer grabbed MacArthur by the lapels and pushed him back into his cell, MacArthur began hitting the corrections officer in the face with a closed fist. Records from the Penobscot County Jail reflect that MacArthur had also been involved in numerous other fights while in custody.[2]

---

[2] This was not the first time that MacArthur assaulted a corrections officer while incarcerated. Before the issuance of the federal charges in this case, MacArthur assaulted two corrections officers of the Penobscot County Sheriff's Department.

## II.  Discussion

### A.  Counting MacArthur's Prior Burglary Convictions as "Crimes of Violence"

MacArthur challenges the district court's decision to count two prior convictions as "crimes of violence" under U.S.S.G. § 2K2.1, thereby raising his base offense level to 26.  The applicable term "crime of violence" is defined as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 2K2.1 cmt. n. 1; § 4B1.2(a).  MacArthur was convicted at least twice of "burglary" under Maine law.  The question is whether he was convicted of "burglary of a dwelling," as is necessary to render burglary a crime of violence under § 2K2.1.  We begin our answer to this question by looking at the Maine statute defining burglary, Me. Rev. Stat. Ann. tit. 17-A, § 401.  That statute provides that a person is guilty of burglary if:

> A.  The person enters or surreptitiously remains in a structure knowing that that person is not licensed or privileged to do so, with the intent to commit a crime therein. Violation of this paragraph is a Class C crime; or

- 5 -

B.  The person violates paragraph A and:

. . . .

(4)  The violation is against a structure that is a dwelling place.  Violation of this subparagraph is a Class B crime[.]

This definition of burglary describes at least two alternative offenses, only one of which includes, as an element of the offense, the entry or unauthorized presence in a dwelling.  So if we know only that a person has been convicted in Maine of "burglary," we do not know whether that person has been convicted of the type of burglary that constitutes a crime of violence under § 2k2.1.  When confronted with ambiguity such as this arising out of a criminal offense that divides into alternative forms with materially differing elements, our established practice is to try to discern, if possible, "which of a statute's alternative elements formed the basis of the defendant's prior conviction."  Descamps v. United States, 133 S. Ct. 2276, 2284 (2013).  In making this attempt, we look only "to limited materials, often called Shepard documents, from the convicting court, such as charging documents, plea agreements, plea colloquies, and jury instructions."  United States v. Serrano-Mercado, 784 F.3d 838, 843 (1st Cir. 2015) (citing Descamps, 133 S. Ct. at 2281, 2284).

But here, as in Serrano-Mercado, this analysis is "frustrated" because the prosecution did not proactively tender

any Shepard documents, while MacArthur, in turn, voiced no objection either to the absence of such documents or to classification of his burglary offenses as "crimes of violence." See id. at 844. McArthur now belatedly argues that, without proper Shepard documents officially confirming the relevant nature of his convictions, the district court erred in finding them to be for crimes of violence.

Such an unpreserved argument failed in Serrano-Mercado, and fails here on plain error review. Indeed, the record here provides grist for an argument that MacArthur has actually waived any argument that he was not convicted of burglarizing two dwellings. See United States v. Jimenez, 512 F.3d 1, 7 (1st Cir. 2007); United States v. Turbides-Leonardo, 468 F.3d 34, 38 (1st Cir. 2006). Most notably, while the PSR neither appended nor expressly referred to any state court document, and listed the offenses as "Burglary," it also included a concise and unambiguous description of each offense. In each instance the PSR listed the formal offense, the date of conviction, the case number, and an express statement that MacArthur was convicted of entering a "dwelling" or a "home," naming in each instance the occupant or owner of the dwelling or home. MacArthur and his counsel--who collectively would know whether MacArthur had burglarized an actual dwelling--voiced no objection, nor even demanded additional proof. Rather, they raised other objections to the PSR. MacArthur

thereafter filed two sentencing memoranda, and he appeared at sentencing with counsel. At the hearing, the district court carefully confirmed that MacArthur had read the entire PSR and that counsel had explained it to him. The following colloquy then took place:

> THE COURT: . . .
>
> But you do understand that, as I told you quite a little while ago, that there are matters in the report that reflect your criminal history, your background, where you were born and brought up, your schooling, your education, your work history, things of that sort, have you had an opportunity to review your background?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It also describes in some detail the nature of the offense -- offenses here. Have you had an opportunity to review the description of the offenses?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Now, you realize, Mr. MacArthur, that I am going to rely on the contents of the report in determining your sentence. You understand that.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Knowing that the contents of the report may affect your sentence, is there anything in the report you believe is inaccurate?
>
> THE DEFENDANT: No, sir.

District courts regularly rely on all sorts of assertions contained in PSRs. See United States v. Fernández-

Cabrera, 625 F.3d 48, 54 (1st Cir. 2010) (explaining that "it is settled beyond hope of contradiction that unobjected-to facts contained in a presentence report ordinarily are considered reliable evidence for sentencing purposes" (quotations marks and citation omitted)). Here, the district court was given no reason not to rely on the express descriptions of the burglary convictions as instances in which MacArthur was indeed convicted of entering a dwelling. Error, if error there was by the court, is hardly obvious. Moreover, to reverse when there is no basis for finding that an objection by MacArthur likely would have led to a different result would make little sense, and might encourage defendants to turn withheld objections into sentencing reset buttons to be employed if the sentence exceeds expectations.

Whether we should therefore invoke waiver to reject MacArthur's appeal, see Turbides-Leonardo, 468 F.3d at 38, we need not decide. His failure to show either obvious error or that the result likely would have differed but for the claimed error dooms his appeal even if we allowed him the benefit of plain error review. See Serrano-Mercado, 784 F.3d at 848.

B.  Acceptance of Responsibility

MacArthur next challenges the district court's decision to deny him a downward adjustment for acceptance of responsibility

under U.S.S.G. § 3E1.1.[3]  MacArthur preserved this issue for review.  Accordingly, review of the district court's factual determination that he has not accepted responsibility is for clear error, and review of the district court's interpretation of the Guidelines is de novo.  United States v. Jordan, 549 F.3d 57, 60 (1st Cir. 2008).

MacArthur relies upon three arguments to support this claim.  First, he contends, at least in his initial brief, that the district court's determination was based on an assault that he committed before he was charged with the federal crimes for which he was sentenced in this case.  But as the sentencing transcript clearly demonstrates, and as appellate defense counsel admitted at oral argument, the district court based its March 12, 2014, sentencing determination on an assault that MacArthur committed after he pled guilty to the federal charges in this case.

Second, MacArthur argues that the district court erred in relying on that assault because that conduct was unrelated to his crime of conviction.  This argument is foreclosed by Jordan, in which this court held that "in determining the propriety vel non of an acceptance-of-responsibility credit, [a district court]

_____

[3] Under § 3E1.1(a), a defendant receives a downward adjustment of two points "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  Subsection (b) of that provision provides that an additional point shall be subtracted from a defendant's offense level where subsection (a) has been satisfied and certain other conditions are met.

may consider a defendant's commission of any post-indictment criminal conduct, whether or not it bears a significant connection to, or constitutes a significant continuation of, the offense of conviction." 549 F.3d at 60-61.

Finally, MacArthur contends that the assault was not established by a preponderance of the evidence at sentencing. The evidence presented, however, included a report from the corrections officer whom MacArthur assaulted on that date. The report described how MacArthur obstructed the officer's efforts to close MacArthur's cell door during a lockdown and how he hit the officer with a closed fist after the officer grabbed MacArthur and pushed him back against the cell wall. This report is enough to establish as not clearly wrong the district court's finding that MacArthur precipitated and committed the assault.

## C. MacArthur's Double Counting Claim

MacArthur also contests the district court's application of the two-point enhancement for causing reckless endangerment during flight under U.S.S.G. § 3C1.2. He argues that the conduct forming the basis for this enhancement--his leading the troopers on a high speed chase--had already been taken into account when the district court applied the four-point enhancement under § 2K2.1(b)(6)(B) for possessing the firearms "in connection with another felony offense." This, according to MacArthur,

- 11 -

impermissibly resulted in double counting.  Because he did not object at sentencing, we review for plain error.

While it is true that the district court cited MacArthur's high speed chase in applying the four-point enhancement under § 2K2.1(b)(6)(B), the district court did so in a belt-and-suspenders manner, as it also cited MacArthur's burglary of the home from which the firearms were stolen.  Since the burglary alone is plainly an uncharged felony, and MacArthur in a sentencing memorandum admitted to that burglary, any reliance by the district court on the car chase was unnecessary.  On plain error review, we cannot, therefore, say that any such reliance could have prejudiced MacArthur even were we to assume, arguendo, that the type of "double counting" of which MacArthur complains would otherwise be improper.

**D.   Pro Se Supplemental Claims**

MacArthur brings several pro se supplemental claims, none of which merit relief.  In these claims, MacArthur seeks relief from an enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e).  MacArthur, however, was not sentenced pursuant to that statute.  Nor did his enhancement under U.S.S.G. § 2K2.1 rely on the residual clause contained in the definition of "crime of violence" under § 4B1.2(a)(2).  His challenges based on the Supreme Court's decisions in Taylor v. United States, 495 U.S. 575

(1990), and <u>Johnson</u> v. <u>United States</u>, 135 S. Ct. 2551 (2015), are, therefore, meritless.

Lastly, MacArthur uses <u>Johnson</u> to attack the Maine state burglary statute, asserting that the statute is both unconstitutionally vague and indivisible.  To the extent MacArthur seeks to collaterally challenge his prior state court convictions in this appeal, we have no jurisdiction to entertain such claims.  His argument, moreover, that the Maine state burglary statute is indivisible fails for the reasons provided above.

### III.  Conclusion

For the foregoing reasons, we <u>affirm</u> the sentence adjudged in this case.