# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-3495

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| | * | |
| Paul A. Jones, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 13, 2011
Filed: June 27, 2011

_____

Before RILEY, Chief Judge, SMITH, Circuit Judge, and STROM,[1] District Judge.

_____

RILEY, Chief Judge.

Paul A. Jones pled guilty to being a felon in possession of a firearm, a fully loaded .380 caliber Baikal semiautomatic pistol, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After calculating Jones's advisory United States Sentencing Guidelines (Guidelines or U.S.S.G.) range to be 77 to 96 months

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

imprisonment (level 21, category VI), the district court[2] sentenced Jones at the bottom of his U.S.S.G. range.

## I. BACKGROUND

The sole issue in this appeal is whether the district court properly calculated Jones's Guidelines range. Jones insists the district court erred in applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(4)(B), which increases the recommended penalty for possessing a firearm with "an altered or obliterated serial number." Because the facts are undisputed, we review the district court's application of the enhancement de novo. See United States v. Finck, 407 F.3d 908, 913 (8th Cir. 2005).

Part of the serial number on Jones's firearm was "filed off" or "scratched over" and not visible to the naked eye. When a forensic specialist at the police crime laboratory later applied a weak acidic solution to the firearm, the entire serial number reappeared. The specialist explained, "when [the Baikal's manufacturer] press[ed] those numbers into the surface, . . . it stresse[d] the lower levels of the metal. . . . When you apply a weak acid . . . , it actually etches away the stressed metal faster than the non[-]stressed metal, and . . . you're able to . . . recover" the serial number.

At sentencing the parties and the district court focused the § 2K2.1(b)(4)(B) analysis upon whether the serial number was "obliterated" and did not discuss whether it was "altered." The district court held the serial number was "obliterated," relying on a series of cases, beginning with United States v. Carter, 421 F.3d 909 (9th Cir. 2005). Carter and its progeny focus on the term "altered" and then hold that a serial number is "altered or obliterated" when "materially changed in a way that makes accurate information less accessible." Id. at 916. See also United States v.

---

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

Love, 364 F. App'x 955, 959-60 (6th Cir. 2010) (unpublished) (following the Carter analysis); United States v. Perez, 585 F.3d 880, 883-85 (5th Cir. 2009) (same). The district court here decided to adopt the Carter analysis and "see what the Eighth [Circuit] has to say about that." We say the district court did not err.

## II.    DISCUSSION

We need not decide whether the serial number on Jones's firearm was "obliterated." The facts are undisputed, and "[i]t is a well-settled principle that we may affirm a district court's judgment on any basis supported by the record." United States v. Pierson, 219 F.3d 803, 807 (8th Cir. 2000). We follow the lead of our sister circuits and hold the serial number on Jones's firearm was "altered or obliterated."

The facts of Carter are similar to those before us. In Carter, the serial number on the defendant's firearm was at the very least "partially defaced" and "not decipherable by the naked eye" but "discernible with the use of microscopy." Carter, 421 F.3d at 910. The Ninth Circuit thoroughly examined the history and purpose of U.S.S.G. § 2K2.1(b)(4)(B) and held the serial number was "altered or obliterated." See id. at 911-16. After finding the meaning of "obliterated" elusive, the Ninth Circuit defined "alter" as "to cause to become different in some particular characteristic . . . without changing into something else" and "[t]o change or make different; modify." Id. at 912 (citations omitted). Addressing the defendant's argument that the serial number "must be rendered scientifically untraceable for . . . § 2K2.1(b)(4) to apply," Carter summarized:

> [N]othing in the language, structural context, legislative history, or purpose of § 2K2.1(b)(4) suggests that any defacement must make tracing impossible or extraordinarily difficult. . . . [A] firearm's serial number is "altered or obliterated" when it is materially changed in a way that makes accurate information less accessible. . . . [U]nder that standard, a serial number which is not discernible to the unaided eye, but which remains detectible via microscopy, is altered or obliterated.

Id. at 916.

Similarly, the serial number on Jones's firearm was "altered or obliterated." A partially "filed off" or "scratched away" serial number, which is not visible to the naked eye, falls well within the statutory scheme. Jones offers no contrary definition or legal authority. We must respect § 2K2.1(b)(4)(B)'s purpose to stem the flow of untraceable firearms in the black market. As the Ninth Circuit observed:

> [I]t may be difficult to determine, from a visual inspection alone, whether a serial number that appears defaced is, in fact, untraceable when scientific means are employed. On the street, where these guns often trade and where microscopy is rarely available, one cannot readily distinguish between a serial number that merely *looks* untraceable and one that actually *is*. At that level, it is appearances that count: A gun possessor is likely to be able to determine only whether or not his firearm *appears* more difficult, or impossible, to trace.

Id. at 915 (emphasis in original). We agree with the Ninth Circuit's analysis and conclusion in Carter.

## III. CONCLUSION

We affirm the district court's judgment.

_____