**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 12-4521**

———————————

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

    v.

TIMOTHY JOELETTE HARRIS,

              Defendant - Appellant.

———————————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:11-cr-00376-BO-1)

———————————

Argued: May 16, 2013            Decided: June 26, 2013

———————————

Before NIEMEYER, GREGORY, and SHEDD, Circuit Judges.

———————————

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Gregory and Judge Shedd joined.

———————————

**ARGUED:** James Edward Todd, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Jennifer P. May-Parker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Kristine L. Fritz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————————

NIEMEYER, Circuit Judge:

After Timothy Harris pleaded guilty to two counts of possession of firearms by a felon, in violation of 18 U.S.C. § 922(g), the district court sentenced him to 105 months' imprisonment. In computing the applicable sentencing range under the Sentencing Guidelines, the district court applied U.S.S.G. § 2K2.1(b)(4)(B), which provides for a four-level enhancement if a firearm "had an altered or obliterated serial number." The district court found that the serial number on one of the firearms possessed by Harris had been gouged and scratched, rendering it less legible, but arguably not illegible.

Harris contends that, even though the district judge was unable to read the serial number correctly at the sentencing hearing, the police report indicated that the serial number was nonetheless legible. With this factual record, he contends that § 2K2.1(b)(4)(B) does not apply because no material change was made to the serial number.

We conclude that Harris reads § 2K2.1(b)(4)(B) too restrictively in suggesting that a serial number must be illegible to be "altered." As we explain herein, a serial number that is made <u>less</u> legible is made different and therefore is altered for purposes of the enhancement. Accordingly, we affirm.

After using a gun to threaten a woman during the course of an argument in Raleigh, North Carolina, police officers arrested Harris and recovered a .25 caliber handgun from him. The police report described the condition of the gun:

> It appears that the serial number on the gun was altered and the fact that there are numerous deep gouges and scratches across the width of the alpha numerics it appears that this was done with some sort of tool. However, the numbers are still legible.

Based on this incident and another, Harris was indicted for and pleaded guilty to illegal firearms possession. The presentence report recommended a four-level enhancement under U.S.S.G. § 2K2.1(b)(4)(B) for possession of a firearm that had an altered or obliterated serial number. Harris objected to the presentence report's recommendation, contending that "because the serial number of the firearm was legible, the firearm was traceable, and therefore the enhancement does not apply."

At the sentencing hearing, the district court overruled Harris' objection and applied the enhancement. After considering the police report, the court conducted its own examination of the handgun in the courtroom with the parties present and made the following factual findings:

> [T]he gun was placed on the bench in front of [me] about 18 inches away and . . . I was not able to read the correct serial number. I read and looked carefully and the serial number that I wrote down from my observation was U032076. And, in fact, the actual

serial number that was determined through more careful and more scientific examination was U022078.

And it appears on the real evidence, on the gun itself, that there are gouges in the metal and scraping along the line of the serial number, but not similar marks on other places on the metal barrel, neither around the serial number, nor on the other side of the barrel. So that the reasonable inference is that the gouging and scraping around the serial number was intended to affect the ability to literally read the serial number not an accidental thing.

There isn't any evidence that the defendant did this, but there is evidence that the serial number was obliterated. And so, I'll include the four level enhancement.

After applying the enhancement in its calculation of the recommended sentencing range, the court sentenced Harris to 105 months' imprisonment, which fell within the Sentencing Guidelines range.

This appeal followed.

II

This appeal presents the single question of whether the serial number on Harris' handgun, which was marked with gouges and scratches that the district court found made it less legible, was "altered," within the meaning of U.S.S.G. § 2K2.1(b)(4)(B) (providing for a four-level sentencing enhancement for the possession of a firearm when a firearm has an "altered or obliterated serial number").

Harris contends that a serial number is not "altered," even though gouged and scratched, if it remains legible. He argues

4

that "altered" requires that the serial number be "materially changed" so that it is not discernible to the unaided eye. Because the police report stated that the serial number on Harris' handgun was legible, he argues that the enhancement should not have been applied.

The government, relying on the district court's finding that it could not accurately read the handgun's serial number when the handgun was placed on the bench before it, contends that "at least one of the numbers" had been "obliterated" so that the serial number was at least "altered." It argues that the gouges and scratches were "both purposeful and deep enough that the firearm's serial number was rendered more difficult to ascertain accurately than it would have been absent the scratch[es]."

While other courts of appeals have variously addressed what is required to render a serial number "altered," we have no published opinion that does so.

The Gun Control Act of 1968 makes it a crime to "possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered." 18 U.S.C. § 922(k). Although Harris was not charged with a violation of § 922(k), his recommended sentencing range was enhanced by application of a mimicking provision in the Sentencing Guidelines, that provided for a four-level sentencing

5

enhancement for possession of a gun with the serial number that had been "altered or obliterated." U.S.S.G. § 2K2.1(b)(4)(B).

The Gun Control Act requires importers and manufacturers to identify each firearm imported or manufactured with "a serial number engraved or cast on the receiver or frame of the weapon, in such manner as the Attorney General shall by regulations prescribe." 18 U.S.C. § 923(i); see also National Firearms Act of 1968, 26 U.S.C. § 5842(a). Regulations require that the importer or manufacturer "legibly identify each firearm" by "conspicuously" placing the serial number on the frame or receiver of the firearm. 27 C.F.R. § 478.92(a)(1) (emphasis added) (implementing the Gun Control Act); see also 27 C.F.R. § 479.102(a) (implementing the National Firearms Act). And the regulations ensure legibility and conspicuousness by prescribing the minimum size and depth of the serial number. See id. (requiring serial numbers to be in print no smaller than one-sixteenth of an inch and in depth no less than .003 inch). The depth also ensures permanence. The Bureau of Alcohol, Tobacco, Firearms and Explosives has explained that requiring serial numbers on firearms serves the important governmental interests of enabling the tracking of inventory and record-keeping by licensees; tracing specific firearms used in crimes; identifying firearms that have been lost or stolen; and assisting in the prosecution of firearm offenses. See ATF Ruling 2009-5. To

these ends, 18 U.S.C. § 922(k) and U.S.S.G. § 2K2.1(b)(4)(B) serve the government's interest in preserving the legibility and permanence of serial numbers on firearms by punishing the possession of a firearm with a serial number that has been altered or obliterated.

Focusing on the term "altered," Harris argues rationally that a serial number is altered when it is rendered illegible such that it cannot be traced, one of the most important purposes for requiring serial numbers. See ATF Ruling 2009-5; see also, e.g., United States v. Carter, 421 F.3d 909, 914 (9th Cir. 2005) ("[Section] 2K2.1(b)(4) intends to 'discourag[e] the use of untraceable weaponry'" (quoting United States v. Seesing, 234 F.3d 456, 460 (9th Cir. 2000))); United States v. Jones, 643 F.3d 257, 259 (8th Cir. 2011) ("We must respect § 2K2.1(b)(4)(B)'s purpose to stem the flow of untraceable firearms in the black market"). While Harris' argument is undoubtedly correct as far as it goes, it still leaves open the question whether "altered," which is less demanding than "obliterated," also includes a serial number that is not illegible but is less legible than it would be without the gouges and scratches.

Legibility is one of the most essential characteristics of a serial number, as is reflected in the serial-number regulations, which require that serial numbers be of a specified

7

size and depth. In imposing these requirements, the regulations reflect the government's interest in having serial numbers placed on firearms that have a minimum level of legibility. Thus, possession of a firearm that is <u>less</u> legible than that level frustrates the purpose of serial numbers and therefore is targeted by § 922(k) and § 2K2.1(b)(4)(B).

These observations are confirmed by the provisions' use of the words "altered" and "obliterated" and the generally accepted meanings of those words. To "alter" is "to cause to become different in some particular characteristic . . . without changing into something else." <u>Webster's Third New International Dictionary</u> 63 (1993); <u>see also</u> <u>The Random House Dictionary of the English Language</u> 60 (2d ed. 1987) (defining "alter" as "to make different in some particular, as size, style, course, or the like; modify"); <u>Merriam-Webster's Collegiate Dictionary</u> 35 (11th ed. 2007) (defining "alter" as "to make different without changing into something else"). Each of the definitions of "alter" recognizes that something is "altered" when it is made "different" in some way. "Obliterate," in contrast, is defined as making something "undecipherable or imperceptible." <u>Webster's Third New International Dictionary</u> 1557. Accordingly, when a serial number is made less legible, it is altered but not obliterated.

Thus, while the possession of a firearm with a serial number that is no longer legible and conspicuous falls in the heartland of § 922(k) and U.S.S.G. § 2K2.1(b)(4)(B), a serial number that is <u>less legible</u> or <u>less conspicuous</u>, but not illegible, is also covered by § 922(k) and U.S.S.G. § 2K2.1(b)(4)(B). This interpretation that a serial number rendered <u>less legible</u> by gouges and scratches is "altered" prevents the word "obliterated" from becoming superfluous.

This is the conclusion that has been reached by a majority of the courts of appeals. <u>See, e.g.</u>, <u>Carter</u>, 421 F.3d at 910 (holding that "for the purposes of Guideline § 2K2.1(b)(4), a firearm's serial number is 'altered or obliterated' when it is materially changed in a way <u>that makes accurate information less accessible</u>" (emphasis added)); <u>Jones</u>, 643 F.3d at 259 ("A partially 'filed off' or 'scratched away' serial number, which is not visible to the naked eye, falls well within the statutory scheme"); <u>United States v. Justice</u>, 679 F.3d 1251, 1254 (10th Cir. 2012) ("What matters is what is 'perceptible,' not what can be discerned by sophisticated scientific techniques"). <u>But see United States v. Perez</u>, 585 F.3d 880, 885 (5th Cir. 2009) (applying § 2K2.1(b)(4) where serial number had been scratched but remained "readable," because "the serial number on [defendant's] firearm looked like someone 'tried to file [it] off'").

9

In this case, the district court, which was the factfinder for purposes of applying § 2K2.1(b)(4)(B), found that the .25 caliber handgun possessed by Harris had gouges and scratches across the serial number that precluded it from reading the serial number correctly, even as it attempted to do so "carefully." Moreover, it found that there were no further markings on the handgun, indicating that the gouges and scratches across the serial number were intentional. The court thus found that these gouges and scratches made the serial number less legible than it would have been without the gouges and scratches.

With these findings, we conclude that the district court did not err in applying the § 2K2.1(b)(4)(B) enhancement because the evidence supports the conclusion that the serial number had been "altered" by making it less legible and therefore different.

Harris challenges this conclusion, arguing, in essence, that the police report indicated that "the numbers [were] still legible" and therefore were not made different. This argument, however, is unpersuasive for two reasons. First, there is no evidence in the record as to how the Raleigh police read the serial number on Harris' handgun. They could have examined the number at a closer distance and under more intense light than was the case when the district judge examined it, or they could

10

have examined it aided by a magnifying glass or a microscope. Under any hypothesis, however, the fact that they were able to read the correct serial number does not controvert the district court's finding that the serial number was rendered <u>less legible</u> by the gouges and scratches. Indeed, even the police recognized that the number was not pristine:

> It appears that the serial number on the gun was altered and the fact that there are numerous deep gouges and scratches across the width of the alpha numerics it appears that this was done with some sort of tool.

Harris' argument also fails to account for the fact that the district court, not the Raleigh police, was the factfinder and that we defer to the court's fact findings unless they are clearly erroneous. Here, we conclude that the district court's findings are not clearly erroneous because the court examined the handgun, as any factfinder would, and found that the serial number had been gouged and scraped and that it was unable to read the correct serial number when "carefully" examining it.

Finally, Harris challenges the district court's factfinding process, arguing that the district court, by viewing the handgun at a distance of 18 inches, "interject[ed] a subjective component . . . into what should be a simple, objective standard." But examining the evidence is just what factfinders do, and the process used by the district court in this case was not an unreasonable way to determine the legibility of the

11

serial number on Harris' handgun.  The court attempted to read the serial number from a distance at which the court would have been able to read a serial number without gouges and scratches, as indicated by its ability to read several digits correctly and its inability to read correctly two of the digits.

For the reasons given, we affirm the judgment of the district court.

AFFIRMED