RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 17-2420

*v.*

CHARLES RAY SANDS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:17-cr-00076-1—Paul Lewis Maloney, District Judge.

Argued: December 5, 2018

Decided and Filed: January 24, 2020

Before: DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Sean M. Lewis, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Sean M. Lewis, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

GRIFFIN, J., delivered the opinion of the court in which DAUGHTREY, J., joined. GIBBONS, J. (pp. 15–16; app. 1–2), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.

After defendant Charles Sands pleaded guilty to being a felon in possession of a firearm, the district court applied a four-level sentence enhancement for possessing a firearm with an "altered or obliterated serial number" pursuant to USSG § 2K2.1(b)(4)(B). The district court applied the enhancement because the firearm's serial number was, although readable, defaced with scratches in three separate locations. Sands challenges the application of the enhancement and argues that the district court erred in finding that the numbers had been "altered" because they were still legible to the naked eye.

We now clarify the standard for § 2K2.1(b)(4)(B)'s application and, consistent with several other circuits, conclude "that a firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible." *United States v. Carter*, 421 F.3d 909, 916 (9th Cir. 2005). Moreover, we hold that a serial number that has been defaced but is still visible to the naked eye is not "altered or obliterated" under § 2K2.1(b)(4)(B). Because the district court erred in interpreting and applying this guideline, we vacate Sands's sentence and remand for resentencing.

I.

When agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives executed a search warrant on Sands's residence, they found him sitting on the couch in the living room with another individual. Sands immediately told the agents that there was a gun inside a safe underneath a pillow he was sitting on. A search of the premises yielded, among other things, a .40 caliber pistol. The serial number "SBS63662" appeared in three places on the weapon, with scratches on all three. Sands, a convicted felon, told the agents that he had found the pistol several weeks earlier. He admitted that he knew it was illegal for him to possess a firearm but denied tampering with the serial numbers.

A federal grand jury indicted Sands for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and for possessing a firearm "which has had the importer's or manufacturer's serial number removed, obliterated, or altered," in violation of 18 U.S.C. § 922(k).  Sands agreed to plead guilty to the § 922(g)(1) charge.  In return, the government agreed to dismiss the § 922(k) charge.  The district court held a change of plea hearing and accepted Sands's guilty plea.  The United States Probation Office then conducted a presentence investigation and prepared a report ("PSR") using the November 1, 2016 edition of the United States Sentencing Guidelines Manual.

The initial PSR recommended applying a four-level sentence enhancement pursuant to USSG § 2K2.1(b)(4)(B) because "the firearm possessed by Mr. Sands had an altered or obliterated serial number."  Sands filed several objections to the initial PSR, including one challenging the applicability § 2K2.1(b)(4)(B).  According to Sands, "[a]lthough the serial number on the firearm was scratched, it remained readable with the naked eye" and therefore "was neither altered nor obliterated."  The final PSR responded to that objection:

> The probation officer opines the serial number on the .40 caliber firearm possessed by Mr. Sands was altered or obliterated.  The serial number was defaced in three different locations.  Based on a review of photographs of the firearm, the serial number in one of the locations appears to be totally obliterated and illegible.  The serial number in the other two locations is significantly defaced, but admittedly still readable; albeit barely.

Before the sentencing hearing, the government and Sands both briefed the issue.  The government included small photographs of the weapon's serial numbers in its sentencing memorandum.  Sands introduced larger, clearer photographs.  In light of these exhibits, the district court did not examine the weapon itself.

At the hearing, the district court recognized that there was no binding authority from this court on this issue and noted that the parties had relied on three out-of-circuit cases:  *United States v. Harris*, 720 F.3d 499 (4th Cir. 2013), *United States v. Carter*, 421 F.3d 909 (9th Cir. 2005), and *United States v. Adams*, 305 F.3d 30 (1st Cir. 2002).  *Harris* and *Carter* concerned § 2K2.1(b)(4)(B), while *Adams* interpreted similar language from 18 U.S.C. § 922(k).  After hearing the parties' oral arguments, the court issued the following ruling:

The Court finds the *Adams* case and the *Harris* case to be persuasive that the enhancement should be scored in this particular case. The Ninth Circuit goes a little bit farther, but the Court finds the *Adams* and *Harris* cases to be persuasive, and I intend to follow them as it relates to the serial number and the defacing of the serial number on the weapon that is involved in this particular case. It is clearly made less legible and is clearly altered for the purpose of trying to mask the identity of this weapon. The defendant's argument is that the numbers, albeit harder to read, are still readable. And to a certain extent with the exception of the left to right, the first six and the second six, in the Court's judgment, are much more difficult to read, at least on the photograph that I have in front of me right now, than if the weapon was clean, if you will, and not defaced. I think it meets the standard. The government has met their burden. Accordingly, the defendant's objection in this regard is overruled.

The district court then imposed a seventy-eight-month sentence. With the four-level enhancement, the guidelines range was seventy to eighty-seven months. Without it, the range would have been forty-six to fifty-seven months. Sands timely appealed.

## II.

"In evaluating the district court's calculation of the advisory Guidelines range, we review the district court's factual findings for clear error and its legal conclusion *de novo*." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007). A factual finding is clearly erroneous "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. McGee*, 494 F.3d 551, 554 (6th Cir. 2007) (quoting *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006)). We review de novo "the district court's legal interpretation of the Guidelines, including mixed questions of law and fact." *United States v. Settle*, 414 F.3d 629, 630 (6th Cir. 2005). "A district court's application of the facts to the Sentencing Guidelines" is one such mixed question that requires fresh review. *United States v. Middleton*, 246 F.3d 825, 844 (6th Cir. 2001).

## III.

## A.

At issue is the interpretation and application of a guideline provision. "In interpreting the Sentencing Guidelines, the traditional canons of statutory interpretation apply." *United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011). "Our analysis begins with the plain meaning and, if

the language is unambiguous, ends there as well." *Perez v. Postal Police Officers Ass'n*, 736 F.3d 736, 740 (6th Cir. 2013). "If the text alone does not admit a single conclusive answer, we can draw on a broader range of interpretive tools." *Id.* at 741 (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11–16 (2011)). Dictionaries lie within our toolbox. *See, e.g.*, *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 225 (1994).

USSG § 2K2.1(b)(4)(B) applies to Sands's firearms conviction, and it provides that "[i]f any firearm . . . had an altered or obliterated serial number, increase [the offense level] by 4."[1] A strict liability enhancement, it applies "regardless of whether the defendant knew or had reason to believe that the firearm . . . had an altered or obliterated serial number." USSG § 2K2.1 cmt. n.8(B); *see United States v. Murphy*, 96 F.3d 846, 849 (6th Cir. 1996) (upholding the lack of a *mens rea* requirement). It does not require any showing that the defendant was the one who damaged the serial number.

If a weapon has multiple serial numbers, only one of them needs to be altered or obliterated for the enhancement to apply. "The text of the guideline requires only '*an* altered or obliterated serial number' . . . [and] does not require that *all* of the gun's serial numbers be so affected." *United States v. Serrano-Mercado*, 784 F.3d 838, 850 (1st Cir. 2015). "In common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either 'any' or 'one.'" *United States v. Warren*, 820 F.3d 406, 408 (11th Cir. 2016) (per curiam) (quoting *United States v. Alabama*, 778 F.3d 926, 932 (11th Cir. 2015)). Thus, § 2K2.1(b)(4)(B) "applies either when any serial number on a gun has been altered or obliterated or when just one serial number has been altered or obliterated." *Id.*; *see United States v. Thigpen*, 848 F.3d 841, 846 (8th Cir. 2017). In this case, the firearm had three depictions of the serial number, each showing slightly different levels of damage.

---

[1]The text of the enhancement is similar, but not identical, to 18 U.S.C. § 922(k), a separate offense that criminalizes possession of "any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered." While Sands was convicted under § 922(g)(1) and not § 922(k), the latter has some relevance to the sentence-enhancement provision at issue. *See Carter*, 421 F.3d at 914 (observing that "the legislative history of Guideline § 2K2.1 suggests that the words 'altered or obliterated' likely are derived from what is today 18 U.S.C. § 922(k)").

B.

The Guidelines do not define "altered" or "obliterated." *Carter*, 421 F.3d at 911. We must therefore give the terms the ordinary meaning they had when § 2K2.1(b)(4)(B) went into effect. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012). As an initial matter, we agree with the Fourth Circuit that "'altered[ ]' . . . is less demanding than 'obliterated.'" *Harris*, 720 F.3d at 503 (collecting definitions of both words). And, because our interpretation of "altered" resolves this appeal, we need not interpret "obliterated."

What, then, does it mean for a serial number to be "altered"? Dictionary definitions help answer this question. To "alter," they tell us, is to "to make different in some particular, as size, style, course, or the like; modify" or "to change; become different or modify." *Random House Webster's Unabridged Dictionary* 60 (2d ed. 2001); *see Carter*, 421 F.3d at 912–13 (collecting and discussing other definitions). An "altered" serial number is therefore one that has been changed, modified, or made different. And do the serial numbers on the gun Sands possessed fit that description? He says they don't because they fall within an entirely different category—one § 2K2.1(b)(4)(B) doesn't cover. Because the serial numbers were still visible to the naked eye, he argues, they were merely "defaced."

We have previously noted that the Guidelines "offer no clear answer" regarding the "degree of alteration . . . required to meet the guideline definition" under § 2K2.1(b)(4)(B). *United States v. Love*, 364 F. App'x. 955, 959 (6th Cir. 2010). In other words, the Guidelines do not clarify how much "defacement" of a serial number is needed for it to be "altered." Thus, interpreting this guideline necessarily raises "the problem of line drawing," and "that problem exists irrespective of where the line is drawn here." *Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 470, (1995) (Breyer, J., concurring in part and dissenting in part).

The most important and influential case on this issue is the Ninth Circuit's decision in *United States v. Carter*. The defendant in that case argued that a firearm's serial number can only be "altered" if it has a "changed meaning"—for example, a three completely changed to an eight. 421 F.3d at 912. Looking to dictionaries, the court noted that "Webster's defines 'alter' as 'to cause to become different in some particular characteristic (as measure, dimension, course,

arrangement, or inclination) without changing into something else.' American Heritage similarly defines alter as '[t]o change or make different; modify.'" *Id.* (citations omitted). The court found that these definitions of "alter," "which require some degree of change or modification, . . . capture its ordinary meaning." *Id.* at 913. Because "alter" encompasses lesser changes than those resulting in a "changed meaning," *id.*, the court rejected the defendant's argument and held that for the purposes of USSG § 2K2.1(b)(4), "a firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible," *id.* at 916.

Looking to the guideline's purpose, the court stated that § 2K2.1(b)(4) is intended to "discourag[e] the use of untraceable weaponry," and this purpose is advanced by "punishing possession of weapons that *appear* more difficult to trace, [which] necessarily deters traffic in weapons that are *impossible* to trace." *Id.* at 915 (first alteration in original). The court also found support in *United States v. Adams*, in which the First Circuit interpreted similar language in 18 U.S.C. § 922(k). 305 F.3d 30. *Adams* held that "any change that makes the serial number appreciably more difficult to discern should be enough" to sustain a conviction under § 922(k). *Id.* at 34. The Ninth Circuit adopted the reasoning in *Adams* and concluded that "nothing in the language or purpose of Guideline § 2K2.1(b)(4) suggests that the defacement must make tracing impossible or extraordinarily difficult for the enhancement to apply." *Carter*, 421 F.3d at 916. Applying its new standard, the court held that "a serial number which is not discernable to the unaided eye, but which remains detectable via microscopy, is altered or obliterated." *Id.*

Three other circuits have explicitly adopted the standard from *Carter*. *United States v. Hayes*, 872 F.3d 843, 846 (7th Cir. 2017); *United States v. Jones*, 643 F.3d 257, 259 (8th Cir. 2011); *United States v. Perez*, 585 F.3d 880, 885 (5th Cir. 2009). Several others, including ours, have cited it approvingly and reached consistent holdings. *Harris*, 720 at 503–04; *United States v. Justice*, 679 F.3d 1251, 1254 (10th Cir. 2012); *Love*, 364 F. App'x at 959; *see United States v. Serrano-Mercado*, 784 F.3d 838, 850 (1st Cir. 2015).

C.

We conclude that the standard from *Carter* is the correct method for applying § 2K2.1(b)(4)(B). Focusing on whether a serial number "is materially changed in a way that makes accurate information less accessible" gives effect to the ordinary meaning of the word "alter" while also remaining mindful of the guideline's purpose. 421 F.3d at 910. If we were to apply the guideline to any "change or a modification," then a defendant who makes a serial number on a firearm *easier* to decipher would receive an increased prison sentence—a result clearly at odds with the underlying purpose of the guideline provision. *See Harris*, 720 F.3d at 503 ("[T]he regulations reflect the government's interest in having serial numbers placed on firearms that have a minimum level of legibility. Thus, possession of a firearm that is less legible than that level frustrates the purpose of serial numbers and therefore is targeted by . . . § 2K2.1(b)(4)(B)."). Accordingly, we adopt the standard from *Carter* and hold that "for the purposes of Guideline § 2K2.1(b)(4), a firearm's serial number is "altered or obliterated" when it is materially changed in a way that makes accurate information less accessible." 421 F.3d at 910.

IV.

Applying the standard from *Carter*, we further hold that a serial number that is visible to the naked eye is not "altered or obliterated" under § 2K2.1(b)(4)(B). This delineation fits under *Carter* because any defacement that slight does not constitute a "material[ ] change," even if it does make the serial number's information technically "less accessible" by requiring one to squint or view the number from a closer position. It also comports with the plain meaning of the word "altered." If a serial number is scratched, but still discernible to the reader without aid, then the number itself has not been "ma[de] different in some particular, as size, style, course, or the like." *Random House Webster's Unabridged Dictionary* 60 (2d ed. 2001). The number remains the same, even to the casual observer.

A.

This position is consistent with nearly every other federal appellate decision on the issue. In *Carter*, the serial number in question was "not decipherable by the naked eye" but was

"discernible with the use of microscopy." 421 F.3d at 910 (internal quotation marks omitted). Applying the standard discussed above, the court held that the serial number was "altered or obliterated." *Id.* at 916. Other courts have upheld the enhancement's application where the serial numbers were defaced or obscured in different ways—to the point that they could not be identified with the naked eye—but were recovered using forensic techniques. *Hayes*, 872 F.3d at 846 ("[The serial number] was not visible because it was covered with a 'paint-like substance,' and . . . forensic specialists had to use a 'chemical solvent' to uncover it."); *Harris*, 720 F.3d at 503 ("[The weapon] had gouges and scratches across the serial number that precluded [the district court] from reading the serial number correctly, even as it attempted to do so 'carefully.'"); *Justice*, 679 F.3d at 1253 ("The serial number on the pistol was illegible, appearing to have been ground down with sandpaper or a tool; but a crime laboratory restored it by smoothing the metal surface and applying acid and water."); *United States v. Salinas*, 462 F. App'x 635, 637 (7th Cir. 2012) (serial number had been filed off and "made to be unreadable by the naked eye" before it was recovered by the crime lab); *Jones*, 643 F.3d at 258 ("Part of the serial number on Jones's firearm was 'filed off' or 'scratched over' and not visible to the naked eye."); *United States v. Shabazz*, 221 F. App'x 529, 530 (9th Cir. 2007) ("[M]ultiple layers of thick, black paint completely obscured the shotgun's serial number, making it unobservable to the naked eye.").

In this court's unpublished decision, *United States v. Love*, the weapon's serial number was not readable to the naked eye either, as "at least three officers and lab technicians had difficulty determining the correct number," "the numbers were not immediately distinguishable to the investigators," and "more than one investigator came to a different conclusion as to the last number." 364 F. App'x. at 960. And in *United States v. Adams*, the First Circuit concluded that "any change that makes the serial number appreciably more difficult to discern should be enough" to sustain a conviction under § 922(k). 305 F.3d at 34. While the defendant claimed that the serial number was still legible, one digit was "damaged badly enough that it could be taken as a 3 or a 5." *Id.* at 35. Thus, the serial number could not be read by the naked eye.

These cases involved serial numbers in various states, after different techniques had been applied to deface or otherwise obscure them from view. But they are united by two critical facts:

(1) none of the serial numbers were visible to the unaided eye and (2) each court upheld the application of § 2K2.1(b)(4)(B). Thus, in the present case, our holding merely reflects the inverse of a principle recognized—either explicitly or implicitly—by federal courts throughout the country.

Only one case does not fit: the Fifth Circuit's decision in *United States v. Perez*, 585 F.3d 880. There, the court explicitly adopted the standard from *Carter*, but concluded that the district court properly applied § 2K2.1(b)(4)(B) where the "damage to a serial number . . . did not render it unreadable." *Id.* at 884. While the court's discussion of *Carter* was extensive, its analysis and application of *Carter*'s standard to the facts of the case were sparse, consisting of just two sentences:

> Turning to the instant case, Perez does not dispute that the serial number on his firearm looked like someone "tried to file [it] off," as the district court found, or that it "appeared to be altered and partially obliterated, as if somebody had attempted to scratch the numbers off," as the PSR stated. Accordingly, the district court did not err in finding that the serial number of the firearm Perez possessed had been materially changed in a way that made its accurate information less accessible, and that it had been "altered or obliterated" for purposes of § 2K2.1(b)(4).

*Id.* at 885 (alteration in original). Based on this passage, it is not entirely clear whether the court was evaluating the merits or ruling that the defendant had forfeited the issue by failing to dispute the PSR's statement that the serial number "appeared to be altered." Also, the court improperly gave weight to the district court's finding that the serial number "looked like someone 'tried to file [it] off,'" *id.* at 885 (alteration in original), because § 2K2.1(b)(4)(B) is a strict liability enhancement. For these reasons, we find *Perez*'s contrary position unpersuasive. And we are not alone; the Fourth Circuit has also declined to follow *Perez*. *Harris*, 720 F.3d at 504 (recognizing *Perez* as somewhat of an outlier and instead choosing to follow the weight of authority).

B.

In addition to comporting with the lion's share of precedent on the issue, our adoption of a "naked eye test" for applying § 2K2.1(b)(4)(B) furthers the underlying purpose of the guideline. Consider the following from *Carter*:

> As this case aptly demonstrates, it may be difficult to determine, from a visual inspection alone, whether a serial number appears defaced is, in fact, untraceable when scientific means are employed. On the street, where these guns often trade and where microscopy is rarely available, one cannot readily distinguish between a serial number that merely *looks* untraceable and one that actually *is*. At that level it is appearances that count: A gun possessor is likely to be able to determine only whether or not his firearm *appears* more difficult, or impossible, to trace.

*Carter*, 421 F.3d at 914–15; *see also United States v. Seesing*, 234 F.3d 456, 460 (9th Cir. 2001). Applying § 2K2.1(b)(4)(B) in situations only where the firearm's serial number is not discernible to the naked eye is consistent with this purpose. Any person with basic vision and reading ability would be able to tell immediately whether a serial number is legible. Thus, individuals may be discouraged from acquiring weapons that fall within the ambit of § 2K2.1(b)(4)(B), with serial numbers they cannot read.

This "naked eye test" also draws a clear line that should lessen confusion and inconsistency in the guideline's application, while at the same time leaving the district courts with appropriate discretion to conduct necessary factfinding at sentencing. The Fourth Circuit's discussion in *Harris* illustrates this point. There, the defendant challenged the method by which the district court examined the serial number on the weapon, "arguing that the district court, by viewing the handgun at a distance of 18 inches, interjected a subjective component into what should be a simple, objective standard." *Harris*, 720 F.3d at 504 (alteration, ellipsis, and internal quotation marks omitted). The Fourth Circuit properly rejected this argument:

> But examining the evidence is just what factfinders do, and the process used by the district court in this case was not an unreasonable way to determine the legibility of the serial number on Harris' handgun. The court attempted to read the serial number from a distance at which the court would have been able to read a serial number without gouges and scratches, as indicated by its ability to read several digits correctly and its inability to read correctly two of the digits.

*Id.* A district court's factfinding procedures under this test will properly be reviewed for clear error.

## C.

After this case was submitted, another panel of this court decided *United States v. Fuller-Ragland*, in which the defendant challenged the application of the § 2K2.1(b)(4)(B) enhancement by arguing that the serial number at issue in his case was "sufficiently legible to be read and to allow the 9mm pistol to be traced." 931 F.3d 456, 465 (6th Cir. 2019) (internal quotation marks omitted). The panel rejected the defendant's argument and affirmed his sentence. *Id.* at 467. Soon after that decision issued, the government filed a letter in this case, pursuant to Federal Rule of Appellate Procedure 28(j), arguing that "[i]n *Fuller-Ragland*, this Court rejected many of the arguments Sands raises in his appeal."

*Fuller-Ragland* neither conflicts with nor controls our decision here for two reasons. First, review of the district court's determinations in *Fuller-Ragland* was for plain error only, as the defendant in that case failed to raise an objection before the district court to the § 2K2.1(b)(4)(B) enhancement. 931 F.3d at 465; *see United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). The panel held that the district court did not commit plain error when other circuits had applied the enhancement in similar situations and when our court, albeit in an unpublished opinion, had affirmed an enhancement under § 2K2.1(b)(4)(B) when "'two of the serial numbers were markedly more difficult to ascertain' and 'the numbers were not immediately distinguishable to the investigators.'" *Id.* at 466 (quoting *Love*, 364 F. App'x at 960). Here, Sands objected to the enhancement before the district court, leaving us with the responsibility to review de novo the legal parameters of the Guidelines provision at issue.

Second, the record before the panel in *Fuller-Ragland* was quite different from the one we confront here. In *Fuller-Ragland*, the panel noted that no picture of the weapon was included in the record. *Id.* at 465. Instead, the parties had agreed—through their acceptance of the facts contained in the PSR—that the serial number on the firearm was "partially obliterated." *Id.* ("Absent an objection, the district court can accept any undisputed portions of the PSR as a finding of fact."). Thus, the panel "proceed[ed] with the understanding that the serial number on

the 9mm pistol was 'partially obliterated.'" *Id.* at 465–66. Sands, by contrast, has never stipulated that the serial numbers on the firearm in this case were altered or obliterated, and the record contains multiple photographs of the weapon.

For these reasons, we find no conflict between our decision here and *Fuller-Ragland*.

V.

At the sentencing hearing in the present case, the district court made a factual finding that the serial number was still readable, but "much more difficult to read" because of the defacement. We find no clear error in that determination. But the court erred in its interpretation and application of § 2K2.1(b)(4)(B) in two ways. First, it emphasized that the serial number had been defaced "clearly . . . for the purpose of trying to mask the identity of this weapon." As a strict liability enhancement, § 2K2.1(b)(4)(B) "make[s] no distinction between serial numbers that have been obliterated intentionally from those numbers that have otherwise been obliterated by forces of nature." *United States v. James*, 643 F. App'x 836, 838 (11th Cir. 2016). Thus, the "intent" behind the scratches on the firearm should play no role in the analysis. Second, the district court erroneously applied the enhancement after finding that the serial number remained visible to the naked eye. As discussed above, that interpretation is at odds with both the plain meaning of the word "altered" and the standard from *Carter* that we have adopted.

For these reasons, we vacate Sands's sentence and remand for resentencing. At resentencing, the district court may decide to reexamine the serial numbers on the firearm in question or rely on its prior factual findings.[2] Either way, the district court should apply *Carter* and the "naked eye test" to determine whether the enhancement under § 2K2.1(b)(4)(B) is appropriate.

---

[2]Sands points out that the district court at sentencing examined photographs of the serial number—rather than the actual weapon—and argues that "the pistol itself would have provided a better opportunity to view the serial number." But Sands did not request that the district court examine the pistol at that time; he instead introduced clearer photographs of the serial numbers than those previously filed by the government. We find no plain error in the district court's decision to rely on the photographs, but note that examining the firearm itself is likely the best practice. *C.f.* Fed. R. Evid. 1002.

VI.

To summarize, we adopt the Ninth Circuit's framework in *Carter* and conclude that under USSG § 2K2.1(b)(4)(B), "a firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible." 421 F.3d at 910. Additionally, we hold that a serial number that is defaced but remains visible to the naked eye is not "altered or obliterated" under the guideline. We vacate Sands's sentence and remand to the district court for resentencing.

---

**DISSENT**

---

JULIA SMITH GIBBONS, Circuit Judge, dissenting.

I respectfully dissent.

The majority approaches this case by looking to standards adopted in other circuits for determining whether a serial number is "altered" within the meaning of U.S.S.G. § 2K2.1(b)(4)(B). Ultimately, it purports to choose the Ninth Circuit's standard, articulated in *United States v. Carter*, 421 F.3d 909 (9th Cir. 2005). The *Carter* standard asks whether the serial number "is materially changed in a way that makes accurate information less accessible." *Id.* at 916. Yet the majority does not merely embrace the *Carter* standard. Instead it adds to it by determining that "a serial number that has been defaced but is still visible to the naked eye is not 'altered or obliterated' under § 2K2.1(b)(4)(B)." (Majority opinion at 2). Both the *Carter* standard and the majority's "addition" to it—actually a different standard—are problematic.

The primary flaw with both the *Carter* approach and the majority's addition is that they stray from the most obvious, and inherently correct, analysis. The word "altered"[1] has well known dictionary meanings. It is a common word, understandable to most people. And, under a dictionary definition, the serial number at issue here is indeed altered because it has been "changed, modified, or made different." (Majority opinion at 6). Photos of the serial number at issue here plainly demonstrate the alteration. See attached Appendix, pp. 1–2 (CA6 R. 23).

*Carter* engages in elaborate discussion of dictionary meanings, 421 F.3d at 912–13, and, while suggesting that it is following them, does not. The majority here refers to them as well. But it does not stop with the correct statement that "an altered serial number is therefore one that has been changed, modified, or made different." It goes on to adopt a very different standard. After nodding to dictionary meanings, *Carter* and the majority opinion embrace elaborate and unnecessary legal analyses and ultimately narrow the definition of "altered" in a way that is

---

[1]The serial number here is not "obliterated."

inconsistent with common sense and the plain language of the guideline. Sometimes, as here, fewer words and less effort at elaborate analysis, produce a sounder result.[2]

Oddly enough the *Carter* holding, if actually followed here, would produce a result different from that reached by the majority. The serial number here "is materially changed in a way that makes accurate information less accessible." If that standard is applied, we would affirm the district court. Yet, when the focus is changed, as it is by the majority opinion, to whether the naked eye can still discern the serial number, the serial number here is not altered. Certainly, the number is "less accessible," but the naked eye can still read it, although with some difficulty.

In addition to the legal problem of going to great lengths to avoid the obvious meaning of a word, the result of narrowing the definition beyond the guideline language has another unfortunate consequence. The district judge is the fact finder and the district court the appropriate place for a determination of whether a serial number is altered. The district judge in this case performed his assigned task, and his conclusion that the serial number in this case was indeed altered is not clearly erroneous. Yet the majority's strained reading of the guideline renders it so. It is this court's "addition" that compels reversal. The serial number here "is visible to the naked eye" and thus, in the majority's view, it is "not obliterated or altered."

We should affirm the district court's decision; I dissent because we do not.

---

[2]The identical "altered" language is also found in 18 U.S.C. 922(g) so the trouble caused by the majority's view extends beyond the guideline interpretation.



A-1



Case 1:17-cr-00017-PLM ECF No. 44-23 filed 09/28/18 PageID.17 Page 2 of 2