19-640
United States v. St. Hilaire

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2019
No. 19-640

UNITED STATES OF AMERICA,
Appellee,

v.

ROBERT ST. HILAIRE,
Defendant-Appellant.

ARGUED: FEBRUARY 7, 2020
DECIDED: MAY 21, 2020

Before:      JACOBS, CALABRESI, CHIN, Circuit Judges.

Robert St. Hilaire appeals from the judgment of the United States District Court for the Eastern District of New York (Glasser, J.) following his guilty plea to possessing a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g). St. Hilaire challenges a four-level sentencing enhancement for possessing a firearm with "an altered or obliterated serial number," imposed pursuant to U.S.S.G. § 2K2.1(b)(4)(B). We consider for the first time the meaning of that phrase and hold that a serial number is "altered" whenever any character

1

on any iteration of a gun's serial number is illegible to the naked eye. Although the district court necessarily proceeded under precedents from other circuits that articulate a somewhat different standard, the court found as fact that at least one iteration of the serial number was illegible to the naked eye, a finding that is not clearly erroneous. Accordingly, we **AFFIRM**.

_____

MATTHEW B. LARSEN, Federal Defenders of New York, New York, NY, for Defendant-Appellant Robert St. Hilaire.

JONATHAN E. ALGOR, Assistant United States Attorney (Samuel P. Nitze, Assistant United States Attorney, on the brief), for Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee United States of America.

Jacobs, Circuit Judge:

After Robert St. Hilaire pleaded guilty to being a felon in possession of a firearm, the United States District Court for the Eastern District of New York (Glasser, J.) applied a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(4)(B) for possessing a firearm that "had an altered or obliterated serial number" (the "Enhancement"). Since this Court had not yet considered what it means for a serial number on a gun to be altered or

obliterated, the district court relied on out-of-circuit case law.  St. Hilaire argues that the Enhancement does not apply because, of the three serial numbers on his gun, one was clearly legible, thus dispelling ambiguity as to the iterations that were more scored and legible only in part.

Consistent with our sister circuits, we hold that the Enhancement applies if a single iteration of a serial number has been altered or obliterated, notwithstanding whether another may be legible.  Moreover, we hold that "altered" means illegible to the naked eye.  Under the circumstances, it was not error for the district court to apply the Enhancement.

## BACKGROUND

The few relevant facts are straightforward.  St. Hilaire was arrested by the New York City Police Department on November 24, 2017, on suspicion of attempting to leave the scene of a car accident.   A protective frisk turned up a loaded Taurus 9mm semiautomatic pistol.  The police report prepared later that night described the gun as "SERIAL# TJN86665 WITH PARTIALLY DEFACED SERIAL#."  (App. at 12.)  Using that number, the police made a Lost/Stolen Firearm Inquiry, which yielded "No Hits."  (App. at 22.)

3

In general terms, a serial number is an identifier composed of a unique sequence of characters, mainly numbers or letters. Guns are usually manufactured with matching iterations of one serial number on different components, such as the frame and the slide. St. Hilaire's gun bears a serial number in three places. One is slightly scratched but clearly legible; one is scratched but still shows most of the characters clearly; the third is so heavily scratched that some numbers are not obvious. The correspondences are sufficient that it would be uncanny for the numbers to baffle anyone who looks closely, makes deductions, and starts with the assumption that the serial numbers are likely the same. (App. at 24-27.)

Since St. Hilaire had been convicted of two state felonies, he was charged with one count of possessing a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g); and he pleaded guilty. The PSR calculated his advisory range under the United States Sentencing Guidelines (the "Guidelines") to be 84-105 months' imprisonment based on a total offense level of 25 and a criminal history category IV.

At the sentencing hearing (and in advance of it), St. Hilaire objected to the inclusion in that calculation of a four-level enhancement for possessing a firearm

4

that "had an altered or obliterated serial number." See U.S.S.G. § 2K2.1(b)(4)(B). He argued that one iteration of the serial number on his gun was clear and that the characters on the others could be easily inferred. Since this Court had not construed the phrase "an altered or obliterated serial number," the district court looked to out-of-circuit case law and applied the Enhancement, finding that "that serial number is not accessible to the eye, I couldn't tell what the numbers of the serial number on that gun were by looking at it." (App. at 43.) St. Hilaire was sentenced below the Guidelines range to 60 months' imprisonment (followed by three years' supervised release).

## DISCUSSION

"We review the sentencing court's interpretation of the Sentencing Guidelines *de novo*, but review its related findings of fact only for clear error." United States v. Potes-Castillo, 638 F.3d 106, 108 (2d Cir. 2011). This distinction matters because the district court both interpreted the Enhancement *and* made a factual finding about the serial numbers.

We conclude that a serial number can be altered or obliterated notwithstanding that another iteration on the gun is legible (Point I). As to the

5

meaning of "altered or obliterated," no question is raised in this case as to obliteration, which matters only for the light that it sheds on the meaning of alteration. As to alteration, we conclude that the test is whether the serial number can be read with the naked eye (Point II).

**I**

The Guidelines prescribe a four-level enhancement "[i]f any firearm . . . had an altered or obliterated serial number." U.S.S.G. § 2K2.1(b)(4)(B). The Enhancement serves to "to discourag[e] the use of untraceable weaponry." United States v. Serrano-Mercado, 784 F.3d 838, 850 (1st Cir. 2015) (alteration in original) (internal quotation marks omitted) (quoting United States v. Carter, 421 F.3d 909, 914 (9th Cir. 2005)). St. Hilaire emphasizes that the serial number on his gun was "clear in one place and merely less so in others," and argues that just one legible iteration renders the Enhancement inapplicable. (Appellant's Br. at 5.) We disagree.

The Enhancement applies if a single iteration of a gun's serial number has been altered or obliterated notwithstanding that another is perfectly legible. The wording references "*an*" altered or obliterated serial number; it "does not require that *all* of the gun's serial numbers be so affected." Serrano-Mercado, 784 F.3d at

6

850. Since the component parts are interchangeable,[1] matching serial numbers assure reliable identification of the firearm as a whole, and a single altered or obliterated serial number renders it more difficult to trace.

Accordingly, the five Courts of Appeals that have considered the question hold that the Enhancement applies if any single iteration of a gun's serial number has been altered or obliterated. (The cases are in the margin.[2]) St. Hilaire argues that none of those cases say "a gun's serial number is 'altered' if it appears clearly in one place and merely less so in others"; that the issue in all those cases was "the inability to tell if serial numbers on different parts of the gun matched"; that the most legible iteration on his gun cures any ambiguity; and that his gun is thus easily traceable. (Reply Br. at 7.) However, the district judge here made a

---

[1] Firearms were among the first devices to be mass produced, after Samuel Colt pioneered the use of interchangeable parts. See Richard C. Rattenbury, Samuel Colt, Encyclopedia Britannica (Online ed. 2020).

[2] See United States v. Sands, 948 F.3d 709, 713 (6th Cir. 2020) ("If a weapon has multiple serial numbers, only one of them needs to be altered or obliterated for the enhancement to apply."); United States v. Jones, 927 F.3d 895, 897 (5th Cir. 2019); ("We join the First, Eighth, and Eleventh Circuits in holding that the applicable guideline requires only that one serial number be altered or obliterated, even if others are clearly legible."); United States v. Thigpen, 848 F.3d 841, 845-46 (8th Cir. 2017) (same); United States v. Warren, 820 F.3d 406, 408 (11th Cir. 2016) (same); United States v. Serrano-Mercado, 784 F.3d 838, 850 (1st Cir. 2015) (same).

finding as to one of the serial numbers that he "couldn't tell what the numbers of the serial number on that gun were by looking at it." (App. at 43.) It follows that the judge could not conclude that all the iterations matched.

Moreover, none of those cases hold (or suggest) that judges may not impose the Enhancement if a comparison of multiple serial numbers, some of them obscured or illegible, supports an inference that the numbers once matched. There are several good reasons why a court is not required to rely on inference to find that the numbers match. The purpose of the Enhancement is to "discourage the use of untraceable weaponry." Carter, 421 F.3d at 915. That goal "is advanced not only by punishing those who possess untraceable firearms, but also by punishing those who possess firearms that are more difficult, though not impossible, to trace." Id. at 914. "[T]he policy behind the enhancement-- deterrence and assisting law enforcement--is served even if law enforcement can ultimately identify the serial number and trace the firearm." United States v. Fuller-Ragland, 931 F.3d 456, 467 (6th Cir. 2019). Moreover, the scoring of serial numbers can obscure alteration made by the addition of strokes to change, *e.g.*, a "J" to a "U" or a "1" to a "7", or by the addition of a character, either in a number that otherwise appears legible or one that is partially obscured. In short, a gun

with an indecipherable serial number on a single interchangeable part is just a swap or two away from being untraceable.

Accordingly, we hold that courts need to separately evaluate each iteration of a gun's serial number, and that the Enhancement applies if just one has been altered or obliterated.

## II

The Guidelines do not define the term "altered or obliterated"; so we consider "the ordinary meaning of the words." United States v. SKW Metals & Alloys, Inc., 195 F.3d 83, 90 (2d Cir. 1999). We agree with our sister circuits that "altered is less demanding than obliterated." Sands, 948 F.3d at 714 (cleaned up) (quoting United States v. Harris, 720 F.3d 499, 503 (4th Cir. 2013)); see also Carter, 421 F.3d at 912 ("Irrespective of how 'obliterated' is construed, 'altered' surely requires a lesser degree of defacement."). Taking the dictionary definitions together in the context of a serial number, to obliterate is to efface entirely a character or a whole serial number, so that none of it is left. We therefore agree with the parties and the district court that there is no obliteration of the serial numbers on St. Hilaire's gun.[3] In each of the three serial numbers,

---

[3] The district court made no explicit finding as to obliteration, but its analysis focused on the meaning of "altered" and case law defining that term. Likewise,

9

including the two with severe scoring, one can easily count the number of

characters, and make out some or most of them.[4]

More difficult is the question whether any of the serial numbers here were

"altered." Taking the dictionary definitions together in the context of serial

numbers, "alteration" is to make different. Ways to alter a serial number are

manifold. One kind of alteration, not at issue here, is the technique (used to

falsify checks) of adding strokes that turn a "1" to a "4" or "7"; or a "3", "6", or

"9" to an "8". The tampering here was done by scratching, which leaves one

number legible, and two less so.

We follow the Sixth Circuit, which defines "altered" to mean illegible. See

United States v. Sands, 948 F.3d 709, 715, 719 (6th Cir. 2020). In that case, the

district court had applied the Enhancement notwithstanding its "factual finding

---

the Government made no explicit concession, but implied as much by focusing
on the definition of "altered" and the application of its proposed definition to the
facts. (See Appellee's Br. at 8 ("The district court correctly applied a four-level
Guidelines enhancement pursuant to U.S.S.G. § 2K2.1(b)(4)(B) based on St.
Hilaire's possession of a firearm with an altered serial number.").)

[4] We need not decide whether a totally effaced but scientifically recoverable
serial number qualifies as "obliterated." See Carter, 421 F.3d at 912 (explaining
that dictionary definitions of "obliterate" "reasonably could embrace a
requirement that a serial number be obliterated not just beyond the unaided eye,
but also beyond scientific recognition").

that the serial number was still readable," reasoning that the defacement made it "much more difficult to read." Id. at 718 (internal quotation marks omitted). The Sixth Circuit vacated the sentence, explaining that the district court's analysis was "at odds with . . . the plain meaning of the word 'altered'" insofar as it "applied the enhancement after finding that the serial number remained visible to the naked eye." Id. at 718-19. Under this "naked eye test," "a serial number that has been defaced but is still visible to the naked eye is not 'altered or obliterated.'" Id. at 711, 717.

This "naked eye test" best comports with the ordinary meaning of "altered"; it is readily applied in the field and in the courtroom; it facilitates identification of a particular weapon; it makes more efficient the larger project of removing stolen guns from circulation; it operates against mutilation that impedes identification as well as mutilation that frustrates it; and it discourages the use of untraceable weapons without penalizing accidental damage or half-hearted efforts. "If a serial number is scratched, but still discernible to the reader without aid, . . . [t]he number remains the same, even to the casual observer." Id. at 715.

11

Some circuits have ruled that a serial number can be "altered" notwithstanding that it remains legible.  See United States v. Millender, 791 F. App'x 782, 783 (11th Cir. 2019) (affirming application of the Enhancement to a "severely scratched but legible" serial number and ruling that "the district court properly declined to adopt an interpretation of 'altered' that would require illegibility"); United States v. Perez, 585 F.3d 880, 884 (5th Cir. 2009) (affirming application of the Enhancement even though the "damage . . . did not render [the serial number] unreadable").  The Government urges us to follow these cases. (See Appellee's Br. at 12 ("[A] serial number that has been made *less* legible has been 'altered' . . . even if it remains legible.").)  We decline the invitation.

Other circuits have arguably implied that a legible serial number can still be "altered," albeit in cases involving illegible serial numbers (and therefore cases that did not present the question).  See United States v. Harris, 720 F.3d 499, 503 (4th Cir. 2013) ("[A] serial number that is *less legible* or *less conspicuous*, but not illegible, is also covered by [the Enhancement].");  United States v. Carter, 421 F.3d 909, 916 (9th Cir. 2005) ("[A] firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information *less accessible*." (emphasis added)); see also United States v.

<u>Adams</u>, 305 F.3d 30, 34 (1st Cir. 2002) ("[A]ny alteration that works against legibility is enough . . . .").

But setting aside how those three cases characterized their rulings, they can be understood as consistent with the naked eye test, at least implicitly or in result.[5]  <u>See</u> <u>Sands</u>, 948 F.3d at 715 (explaining that the naked eye test "is consistent with nearly every other federal appellate decision on the issue"). That is not surprising, given that readability is the intuitive test of alteration in this context.  Serial numbers with some illegible characters are "more difficult" to trace (even if "not impossible").  <u>Carter</u>, 421 F.3d at 914.  "Any person with basic vision and reading ability would be able to tell immediately whether a serial number is legible."  <u>Sands</u>, 948 F.3d at 717.  It is useful and fair to "draw[] a clear line that should lessen confusion and inconsistency in the guideline's application,

---

[5] The naked eye test would not affect the outcomes of these cases.  The Enhancement would still apply since the serial numbers in each of them were illegible.  In <u>Harris</u>, the district judge "was unable to read the correct serial number when 'carefully' examining it."  720 F.3d at 504.  In <u>Carter</u>, the defendant "concede[d] that the serial number on the firearm he possessed [was] 'not decipherable by the naked eye.'"  421 F.3d at 910.  And in <u>Adams</u>, one digit in the serial number was "damaged badly enough that it could be taken as a 3 or a 5."  305 F.3d at 35.

while at the same time leaving the district courts with appropriate discretion to conduct necessary factfinding at sentencing." Id.

We are unpersuaded by courts that reject legibility as a standard on the ground that it would render "obliterated" superfluous.[6]  Those observations do not take into account the many ways of tampering with a serial number, or the ways the terms can overlap: a serial number can be altered by obliteration of one or more characters; and the inability to read any appreciable part of a serial number can amount to obliteration in effect.  Finally, we acknowledge that an artful change or addition to a serial number would of course read as legible to the naked eye, though it would render the original number illegible and thus altered.  The facts of this case, in which the numbers were scored, do not present that issue.

\* \* \*

In this case, the district court applied the correct approach, assessing the iteration of the serial number that was most badly scored.  Having done so, the

---

[6] See Millender, 791 F. App'x at 783 ("[T]he district court properly declined to adopt an interpretation of 'altered' that would require illegibility because that interpretation would render 'obliterated' superfluous."); Harris, 720 F.3d at 503 ("This interpretation that a serial number rendered *less legible* by gouges and scratches is 'altered' prevents the word 'obliterated' from becoming superfluous.").

court found as fact that it was illegible to the naked eye.  That finding is not clearly erroneous.  Imposition of the Enhancement under U.S.S.G. § 2K2.1(b)(4)(B) was not error.  The judgment is **AFFIRMED**.